721 A.2d 1072

**Janet Susan Selden WILLIAMS**

v.

**Ronald K.M. WILLIAMS.**

**Appeal of Commonwealth of Pennsylvania.**

Supreme Court of Pennsylvania.

Submitted Oct. 22, 1998.

Decided Dec. 22, 1998.

Thomas D. Schneider, Bala Cynwyd, for Com.

Ronald K.M. Williams, Bala Cynwyd, Pro Se.

Mark Momjian, Philadelphia, for Janet Susan Shelden Williams.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

### OPINION OF THE COURT

FLAHERTY, Chief Justice.

This is an appeal by allowance from an order of Superior Court which reversed a judgment of sentence for direct criminal contempt that had been imposed on an attorney, Ronald K.M. Williams, by the Court of Common Pleas of Philadelphia County.

On November 27, 1993, Williams was proceeding pro se in a custody dispute in the court of common pleas. At issue was whether he or his ex-wife would have custody of their child. During the proceedings, when the court sustained an objection to a question that Williams posed to a witness, the following exchange occurred:

THE COURT [Judge Braxton]: Objection is sustained.

MR. WILLIAMS: He's such a [f------ a------ ].

[OPPOSING COUNSEL]: I heard him say that you are such a [f------ a------ ]. I heard it as an officer of the court. And the stenographer is nodding her head.

That's exactly what he said, "He is such a [f------ a------ ]." And he said it under his breath. And as an officer of the court, I am standing here, and I am testifying that that's exactly what he said.

MR. WILLIAMS: Your Honor, let the record reflect—

[OPPOSING COUNSEL]: I ask that he be held in contempt of court for that.

MR. WILLIAMS: Your Honor, let the record reflect that [opposing counsel] is standing up yelling and screaming.

THE COURT: The record will reflect. Do you have something to say Mr. Williams?

MR. WILLIAMS: Let the record reflect that at no time did I ever say anything regarding any "Judge Braxton."

THE COURT: Very well, have a seat.

The court announced that it would address criminal contempt at the end of the custody proceedings. Nevertheless, it immediately called two witnesses to testify regarding Williams' comment. The custody hearing then continued to its conclusion, after which the court heard additional testimony regarding Williams' comment. Williams was then found to be in direct criminal contempt. He was sentenced to undergo a mental health evaluation and spend three days in the county jail.

An appeal to Superior Court followed. The judgment of sentence was reversed on the basis that Williams' comment did not obstruct justice and, thus, that it did not fulfill the statutory test for contempt under 42 Pa.C.S. § 4132. *Williams v. Williams,* 452 Pa.Super. 52, 681 A.2d 181 (1996). We granted allowance of appeal to review that determination.

In pertinent part, 42 Pa.C.S. § 4132 provides

The power of the several courts of this Commonwealth to issue attachments and to impose summary punishments for contempts of court shall be restricted to the following cases

. . . .

(3) The misbehavior of any person in the presence of the court, thereby obstructing the administration of justice.

■ To sustain a conviction for direct criminal contempt under this provision there must be proof beyond reasonable doubt (1) of misconduct, (2) in the presence of the court, (3) committed with the intent to obstruct the proceedings, (4) that obstructs the administration of justice. *Behr v. Behr,* 548 Pa. 144, 149, 695 A.2d 776, 779 (1997). We agree with the conclusion of Superior Court that the remark made by Williams did not satisfy this test.

■ The first element, misconduct, was clearly present, inasmuch as it was inappropriate and unacceptable behavior for an attorney or any other person conducting business in a courtroom to make such a remark. See *Commonwealth v. Falana,* 548 Pa. 156, 162, 696 A.2d 126, 129 (1997) (contemptuous misconduct is behavior that is inappropriate to the actor). Likewise, with regard to the second element, there is no dispute that the objectionable comment was made in the presence of the court. Insofar as the third element, which relates to Williams' intent, there is less certainty. Opposing counsel claimed that Williams made the remark "under his breath." There is no indication that the remark was even heard by the court. The amplitude of such a remark can have a bearing on whether it was intended to obstruct the proceedings. Nevertheless, we have said that "when an individual makes a remark in the courtroom while the judge is physically present, he cannot avoid a conviction for contempt simply because the judge did not hear him speak the words in question." *Falana,* 548 Pa. at 162, 696 A.2d at 129.

■ In any event it is plain that the fourth element, requiring that there have been an actual obstruction of the proceedings, was not satisfied. For this reason reversal of the conviction was proper. As we stated in *Behr,* 548 Pa. at 149, 695 A.2d at 779,

> To obstruct justice, conduct *must significantly disrupt* proceedings. [*In re*] *Campolongo* [, 495 Pa. 627, 435 A.2d 581 (1981) ]. We noted in *Commonwealth v. Garrison,* 478 Pa. 356, 386 A.2d 971 (1978) (plurality opinion), that contempt requires actual, imminent prejudice to a fair proceeding or

prejudice to the preservation of the court's orderly procedure and authority. "Remarks that are injudicious, or even disrespectful, will not, without more, justify a summary conviction for contempt of court." *Campolongo*, at 633, 435 A.2d at 584.

(Emphasis added). *Accord Falana*, 548 Pa. at 161, 696 A.2d at 128.

Here, the inappropriate remark caused no significant disruption of the proceedings. As was stated by Superior Court in reversing Williams' conviction,

[A] mere affront to the trial judge is not sufficient to sustain a conviction for criminal contempt. Inappropriate and even ill-mannered conduct which does not obstruct or delay the trial falls short of the misbehavior punishable under 42 Pa.C.S. § 4132(3)....

[Williams'] comment in the present case did not obstruct the administration of justice. While there was a momentary break in the proceedings, the hearing resumed quickly. The entire incident encompassed just three and a half pages of hearing transcript out of three hundred and eighty one transcribed that day. After the trial court verified that [Williams] had made the statement, the custody hearing immediately recommenced. Such a transient delay is not an obstruction of justice.

452 Pa.Super. at 57, 681 A.2d at 183 (citations omitted) (footnote omitted). Further, as the Supreme Court of the United States noted in *In re Little*, 404 U.S. 553, 555, 92 S.Ct. 659, 660, 30 L.Ed.2d 708, 711 (1972), trial judges are supposed to be persons of fortitude who are able to thrive in a hardy environment, and they must be on guard against confusing offenses to their sensibilities with obstruction of the administration of justice.

In short, we believe that the trial court's personal offense at Williams' comment erroneously led to the finding of criminal contempt. That is not to say, however, that the comment was less than reprehensible. Williams' conduct obviously warranted strong disapproval, and the trial court might appropriately

have considered referring the matter to the disciplinary board. As a member of the bar, Williams had a responsibility to display respectful conduct in the courtroom. As is stated in the Rules of Professional Conduct, Preamble (1995) "A lawyer should demonstrate respect for the legal system and for those who serve it, including judges, other lawyers and public officials."

Notwithstanding Williams' frustration at receiving an adverse evidentiary ruling in the course of his child custody hearing, it was his responsibility to contain his displeasure and not resort to profanity. His brief departure from that standard, however, through a single remark made "under his breath," did not rise to the level of criminal contempt. Superior Court properly reversed the judgment of sentence.

Order affirmed.

Justice SAYLOR files a dissenting opinion which is joined by Justice CAPPY and Justice NIGRO.

SAYLOR, Justice, dissenting.

While not every intemperate remark will cross the line which separates zealous advocacy from contemptuous conduct, in my view the vulgar and insulting language at issue was appropriately punishable summarily as direct contempt. Counsel's remarks were not only injudicious and disrespectful—the epithets directed at the Court were an affront to the authority and dignity of the tribunal and thus alone sufficient to constitute interference with the due and orderly administration of justice.

Justice CAPPY and Justice NIGRO join this dissenting opinion.