J-S24011-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| AMANDA M. NOTTE | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| BRAD M. PIPERATA | |
| Appellant | No. 2260 EDA 2014 |

Appeal from the Order Dated July 11, 2014
In the Court of Common Pleas of Northampton County
Domestic Relations at No(s): CP-48-PF-2013-764

BEFORE:  GANTMAN, P.J., ALLEN, J., and MUSMANNO, J.

MEMORANDUM BY GANTMAN, P.J.:          **FILED APRIL 22, 2015**

Appellant, Brad M. Piperata, appeals from the order entered in the Northampton County Court of Common Pleas, which found Appellant in indirect criminal contempt of court for violating an order under the Protection From Abuse ("PFA") Act,[1] in favor of Appellee, Amanda M. Notte. We affirm.

In its opinion, the trial court fully and correctly set forth the relevant facts and procedural history of this case.  Therefore, we have no reason to restate them.

Appellant raises three issues for our review:

WHETHER [APPELLEE] FAILED TO PROVE BEYOND A

_____

[1] 23 Pa.C.S.A. §§ 6101-6122.

REASONABLE DOUBT THAT [APPELLANT'S] ACTIONS CONSTITUTED CONTACT?

WHETHER [APPELLEE] FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT [APPELLANT] ACTED WITH WRONGFUL INTENT?

WHETHER [APPELLEE] FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT THE PFA ORDER WAS SUFFICIENTLY DEFINITE, CLEAR, AND SPECIFIC TO [APPELLANT] AS TO LEAVE NO DOUBT OF THE CONDUCT PROHIBITED?

(Appellant's Brief at 2).

"[W]hen reviewing a contempt conviction, much reliance is given to the discretion of the trial judge. Accordingly, we are confined to a determination of whether the facts support the trial court decision." **Commonwealth v. Kolansky**, 800 A.2d 937, 939 (Pa.Super. 2002) (quoting **Williams v. Williams**, 681 A.2d 181, 183 (Pa.Super. 1996), *aff'd*, 554 Pa. 465, 721 A.2d 1072 (1998)). "We will reverse a trial court's determination only when there has been a plain abuse of discretion." **Kolansky, supra** at 939. "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." **Commonwealth v. Griffiths**, 15 A.3d 73, 76 (Pa.Super. 2010) (quoting **Commonwealth v. Dent**, 837 A.2d 571, 577 (Pa.Super. 2003), *appeal denied*, 581 Pa. 671, 863 A.2d 1143 (2004)).

[U]nless the evidence establishes an intentional

disobedience or an intentional neglect of the lawful process of the court, no contempt has been proven. Moreover, a conviction for criminal contempt requires proof beyond a reasonable doubt.

*Kolansky, supra* at 940 (internal citations and quotation marks omitted).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Anthony S. Beltrami, we conclude Appellant's issues merit no relief. The trial court opinion comprehensively discusses and properly disposes of the questions presented. (*See* Trial Court Opinion, filed October 2, 2014, at 5-8) (finding: **1)** Appellant admitted he was aware of Appellee's presence when he arrived at restaurant; nevertheless, Appellant chose to enter patio dining area in dramatic fashion, jumping over planter near table where Appellee was seated; Appellant's conduct constituted prohibited, nonverbal contact under final PFA order; Appellant made eye contact with Appellee and moved closer to Appellee by jumping over planter; **2)** Appellant's theatrical entrance onto patio evidenced wrongful intent; Appellant's conduct was designed to alarm Appellee, especially where Appellant had driven past Appellee earlier that day; Appellant's actions fit into larger pattern of behavior intended to occur near Appellee and to alarm her; although Appellant claimed to have jumped over planter to avoid Appellee, court found Appellant's actions drew unnecessary attention to his presence, causing Appellee to become unsettled and leave restaurant; **3)** final PFA order specifically stated, "[Appellant] is prohibited from having **ANY CONTACT** with [Appellee] either directly or

- 3 -

indirectly" at any location; order also advised Appellant not to contact Appellee by nonverbal means; given such clear language, Appellant could have no doubt that order prohibited him from having type of contact he engaged in with Appellee).  Accordingly, we affirm on the basis of the trial court opinion.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/22/2015

**IN THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY, PENNSYLVANIA CIVIL ACTION**

FILED
2014 OCT -2 A II: 13
CLERK OF
COMMON PLEAS COURT
CIVIL DIVISION
NORTHAMPTON COUNTY PA

| | | |
|---|---|---|
| AMANDA M. NOTTE, | ) | |
| Plaintiff | ) | No. C-48-PF-2013-764 |
| | ) | |
| v. | ) | |
| | ) | |
| BRAD M. PIPERATA, | ) | |
| Defendant | ) | |

## MEMORANDUM OPINION PURSUANT TO Pa.R.A.P. 1925(a)

Defendant has appealed to the Superior Court from the judgment of sentence imposed by this Court on July 11, 2014. On that date, Defendant was sentenced to a minimum of three days to a maximum of six days in Northampton County Prison, followed by five months, twenty-four days of probation, after he was found guilty of indirect criminal contempt for violating a protection from abuse Order entered on October 9, 2013.

On September 30, 2013, the plaintiff, Amanda M. Notte, filed a Petition for Protection from Abuse against the defendant, Brad M. Piperata, her former boyfriend. According to Plaintiff's petition, at 8:30 a.m. on September 30, 2013, Defendant came to Plaintiff's new boyfriend's house,

1

where Plaintiff was present, and asked to speak with Plaintiff's new boyfriend. The petition alleged that Defendant told Plaintiff that her new relationship would be a problem for him and that he could not stand that Plaintiff was with someone else. The petition alleged that Defendant was also driving by Plaintiff's house looking for her. The petition further alleged that, in the past, Defendant attempted to contact Plaintiff at the place where she babysits and left Plaintiff numerous harassing and verbally abusive text and voicemail messages. In addition, the petition alleged that Defendant had committed physical violence against Plaintiff in the past, such as slamming her up against a wall by her throat, destroying a hotel room, and spitting in her face. On the date the petition was filed, the Honorable Michael Koury, Jr. issued a temporary protection from abuse Order and scheduled the matter for a hearing on October 9, 2013.

The hearing was held on October 9, 2013, at which time the undersigned entered a final protection from abuse Order after hearing evidence essentially conforming to the allegations in Plaintiff's petition. The final Order was for a period of three years and prohibited Defendant from abusing, stalking, or harassing Plaintiff and from threatening or attempting to use physical force against her. The Order further prohibited Defendant from having "**ANY CONTACT** with Plaintiff either directly or indirectly . . . at any location." (Final Protection Order ¶ 3.)

2

On April 17, 2014, Defendant filed a Motion to Dismiss/Modify Protection from Abuse Order, claiming he could not comply with the final Order because Plaintiff had moved into the building where he was operating a business. A hearing on the motion was scheduled for May 2, 2014. The hearing was subsequently continued to May 23, 2014.

On May 7, 2014, Plaintiff filed the Indirect Criminal Contempt Complaint that is the subject of this appeal. On the same date, Judge Dally issued a rule on Defendant to show cause why he should not be held in contempt and scheduled the hearing for May 23, 2014, to be heard with Defendant's Motion to Modify/Dismiss. The hearing on both matters was subsequently continued to July 11, 2014.

On July 11, 2014, the parties appeared before the Court. At that time, Defendant withdrew his Motion to Modify/Dismiss, and a hearing was held on Plaintiff's complaint for contempt. The evidence established that on May 6, 2014, Plaintiff was at the Terra Café, which is located on Northampton Street in Easton, Pennsylvania, directly across from her residence in the Pomeroy building. (N.T., 7/11/2014, at 4:14-5:18.) While Plaintiff was outside the café having coffee with her friend, Defendant drove past and looked at Plaintiff. (*Id.* at 5:14:25.)

Shortly thereafter, Plaintiff and her friend went to lunch at Mesa, a restaurant located on Third Street in Easton, Pennsylvania, less than two blocks from Terra Café. (*Id.* at 6:1-10.) Plaintiff was seated at an outdoor

3

patio in front of the restaurant when Defendant drove up to the front of the restaurant and exited his car. (*Id.* at 6:11-7:5.) The outdoor patio area of Mesa has tables on either side of the front entrance. (*Id.* at 9:19-22.) On the side where Plaintiff was seated, there are approximately three tables, and on the other side, there are approximately six tables. (*Id.* at 10:9-10.) Defendant looked at Plaintiff, entered the patio on the side opposite Plaintiff by jumping over a barrier of planters, walked through the patio, and entered the restaurant through the dining room. (*Id.* at 6:25-7:5, 9:2-10:14, 12:9-13.) After this occurred, Plaintiff left the premises. (*Id.* at 7:5.)

Defendant testified that he did not see Plaintiff sitting outside Terra Café earlier in the day, as Plaintiff had claimed. (*Id.* at 16:10-12.) The Court did not find this testimony to be credible. In his testimony, Defendant claimed that he ordered food from Mesa in advance and came to pick it up without knowing Plaintiff was present. (*Id.* at 16:17-21, 19:17-20.) However, Defendant admitted that he saw Plaintiff when he arrived at the restaurant and before he got out of his car. (*Id.* at 16:22:24, 17:24-18:1.) He also admitted that he jumped the planter onto the patio. (*Id.* at 18:17-18.) Defendant claimed that the reason he continued to enter the restaurant despite seeing Plaintiff was that he has a medical condition which requires him to eat every two to three hours. (*Id.* at 19:8-12.) The Court did not find this testimony to be credible.

4

Based upon Defendant's admissions and Plaintiff's testimony, the Court found that Defendant had intentionally violated the Court's final protection Order entered on October 9, 2013, and sentenced him as noted above.

On August 7, 2014, Defendant filed a Notice of Appeal. On August 8, 2014, the Court filed an Order requiring Defendant to file a concise statement of matters complained of on appeal ("Concise Statement"). On August 11, 2014, Defendant filed a Concise Statement which states:

> 1.     The Court erred in finding that the Plaintiff had proven beyond a reasonable doubt:
>
> > a.     that the Order was sufficiently definite, clear, and specific to the Defendant as to leave no doubt of the conduct prohibited;
> >
> > b.     that the Defendant committed an act that was volitional;
> >
> > c.     that the Defendant acted with wrongful intent; and
> >
> > d.     that the Defendant's conduct constituted contact.

(Concise S.)

23 Pa.C.S.A. § 6114(a) states that "[w]here the . . . plaintiff [has] filed charges of indirect criminal contempt against a defendant for violation of a protection order . . . the court may hold the defendant in indirect criminal contempt and punish the defendant in accordance with law."

> A charge of indirect criminal contempt consists of a claim that a violation of an Order or Decree of court occurred outside the presence of the court. *Commonwealth v. Padilla,* 885 A.2d

5

994 (Pa. Super. 2005). "Where a PFA order is involved, an indirect criminal contempt charge is designed to seek punishment for violation of the protective order." *Id.* at 996. As with those accused of any crime, "one charged with indirect criminal contempt is to be provided the safeguards which statute and criminal procedures afford." *Id.* at 996–97 (citation omitted). To establish indirect criminal contempt, the Commonwealth must prove: 1) the Order was sufficiently definite, clear, and specific to the contemnor as to leave no doubt of the conduct prohibited; 2) the contemnor had notice of the Order; [3)] the act constituting the violation must have been volitional; and 4) the contemnor must have acted with wrongful intent. *Commonwealth v. Ashton,* 824 A.2d 1198, 1202 (Pa. Super. 2003).

*Commonwealth v. Brumbaugh,* 932 A.2d 108, 110 (Pa. Super. 2007).

In this case, all four elements of contempt were proven beyond a reasonable doubt. As to the first element, the final protection Order entered on October 9, 2013, clearly and specifically stated that "Defendant is prohibited from having **ANY CONTACT** with Plaintiff either directly or indirectly . . . at any location." (Final Protection Order ¶ 3.) The Order goes on to state that "**Defendant (either directly or indirectly . . . ) shall not contact Plaintiff . . . by . . . nonverbal . . . means**." (*Id.*) The Order also states that "Defendant shall not contact Plaintiff, either directly or indirectly, . . . by any . . . means." (*Id.* ¶ 4.) Given the clear language quoted above, there could have been no doubt in Defendant's mind that the Order prohibited him from having any contact, whatsoever, with Plaintiff.

With regard to the second element, the Order was issued at a hearing where Defendant was present and was represented by counsel. Defendant

6

has not argued that he did not have notice of the Order, and in Northampton County, each party is provided with a copy of a final protection order immediately following a protection from abuse hearing.

Regarding the third element, Defendant's actions were volitional. Defendant admitted he was aware of Plaintiff's presence when he arrived at Mesa and that the protection from abuse Order prohibited all contact. Nevertheless, Defendant volitionally chose to dramatically enter the area where Plaintiff was located by hopping over a planter, with full knowledge of the relevant circumstances. No force beyond Defendant's free will compelled him to do so. Lastly, Defendant's conduct constituted prohibited contact because among the forms of contact prohibited by the final protection from abuse Order is that which is established through "nonverbal . . . means." (Final Order ¶ 4.) By making eye contact with Plaintiff and choosing to move closer to her by jumping over the planter in her presence, Defendant voluntarily made contact with Plaintiff.

As to the final element, Defendant's theatrical entrance onto the patio area was evidence of his wrongful intent, as it was clearly designed to alarm Plaintiff, especially given the fact that, just a short time earlier, Defendant had shown up at the Terra Café unexpectedly and without warning. Although Defendant claims that he did not see Plaintiff at the Terra Café, the Court did not find this testimony credible and instead found that Defendant's conduct fit into a pattern of behavior intended to occur within Plaintiff's

7

physical presence and to alarm her. Though Defendant claims that he hopped over the planter and entered the restaurant without using the front entrance in an effort to avoid Plaintiff, the Court found that this course of action drew unnecessary attention to his presence, causing Plaintiff to become unsettled and ultimately vacate the area.

For all of the above reasons, the evidence was sufficient to establish that Defendant committed indirect criminal contempt by intentionally violating the final protection from abuse Order issued on October 9, 2013.

BY THE COURT:

Date: October 2, 2014

ANTHONY S. BELTRAMI, J.

8