**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| OLGA SEGREAVES | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| ROSS SEGREAVES | : | |
| | : | |
| Appellant | : | No. 888 EDA 2021 |

Appeal from the Order Entered April 9, 2021
In the Court of Common Pleas of Northampton County
Civil Division at No(s): C-48-PF-2016-00811

BEFORE: STABILE, J., KING, J., and PELLEGRINI, J.[*]

MEMORANDUM BY KING, J.: **FILED DECEMBER 17, 2021**

Appellant, Ross Segreaves, appeals from the order entered in the Northampton County Court of Common Pleas, which found Appellant in indirect criminal contempt of court for violating an order under the Protection From Abuse ("PFA") Act,[1] in favor of Appellee, Olga Segreaves. We affirm.

The relevant facts and procedural history of this appeal are as follows. Appellant and Appellee were married, and they are the parents of two minor children. In September 2016, while divorce proceedings were underway, the parties had a heated confrontation.

> On or about September 21, 2016, [Appellee] obtained a temporary [PFA] Order in the instant case…. Per the request of [Appellee], that temporary Order was dismissed without prejudice on October 3, 2016. On that same date of October

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 23 Pa.C.S.A. §§ 6101-6122.

3, 2016, [Appellee], by and through her counsel, … and [Appellant], who was *pro se*, reached an agreement that was made part of the record wherein [Appellee] agreed to withdraw her PFA in exchange for exclusive possession of the marital home and other modifications to the parties' Custody Order.

On November 18, 2016, the [trial court] conducted a hearing on a Petition for Contempt filed by [Appellee] wherein [Appellee] alleged violations of the parties' agreement of October 3, 2016. [Appellee] alleged that [Appellant] showed up at her home on multiple occasions and repeatedly harassed her. Following this hearing, [the trial court] reinstated the temporary PFA Order. [Appellee] later obtained a final PFA Order against [Appellant], which was set to expire November 18, 2019. [The trial court] directed that [Appellant] could only contact [Appellee] on matters pertaining to the custody of their children.[2]

[Appellee] filed a request for an extension of the final PFA Order on October 31, 2019. A hearing was scheduled for November 8, 2019. The [trial court] entered the first extension of the PFA Order on November 5, 2019, extending the PFA Order until November 22, 2019. On November 22, 2019, by agreement of the parties, the final PFA Order was extended for an additional three years and is now in effect until November 22, 2022. On September 3, 2020, at the request of [Appellee], the [trial court] entered an Order modifying the PFA Order to prevent [Appellant] from contacting the following individuals, all of whom were friends or acquaintances of [Appellee]: 1) Sue Gunderman; 2) Martin Gunderman; and 3) Jorge Parra. [Appellant] had sent them numerous letters from prison concerning [Appellee].

(Trial Court Opinion, filed May 13, 2021, at 4-6) (internal citations omitted).

Between November 18, 2016 and December 14, 2020, the trial court

---

[2] The final PFA order specifically prohibited Appellant "from having **ANY CONTACT**" with Appellee, "either directly or indirectly through a third party…." (Order, 1/24/17, at ¶3) (emphasis in original).

found Appellant guilty of ten (10) charges of indirect criminal contempt for violating the PFA order.[3] At the December 14, 2020 contempt hearing, the court explained Appellant's most recent violations of the PFA order as follows:

> THE COURT: Sir, the contempt petition that is date-stamped September 3, 2020, alleges that while you were incarcerated [you] wrote letters to [Appellee's] close friends, mailed them to their family business address, and told her friends to ask [Appellee] to come before me and ask for your release.
>
> The friend has appeared numerous times here on previously scheduled hearings and gave me a stack of letters from you, sir. Do you admit you did these things?
>
> [APPELLANT]: Yes, I have already stated that. Yes.
>
> THE COURT: Sir, the contempt petition that was date-stamped November 5, 2020, alleges that on October 17, 2020, [Appellee] received a … health guide on bipolar disorder, and then a couple of days later, a letter came addressed to her [from the] International OCD Foundation. And that on November 4, 2020, [Appellee's] friend received a letter … at her work at St. Luke's Hospital campus, and that it was addressed from a correctional facility. Do you admit that you sent these items?
>
> [APPELLANT]: Yes.

(N.T. Contempt Hearing, 12/14/20, at 11-12). The court also warned Appellant that he would face additional prison time if "in any way, shape, or form" he contacted Appellee, "or anyone associated with [Appellee] for any

---

[3] In addition to the criminal contempt charges, Appellant entered a guilty plea to first-degree misdemeanor stalking of Appellee on June 1, 2018. The court sentenced Appellant to three (3) to six (6) months' imprisonment, followed by twenty-four (24) months of probation for the stalking conviction.

reason[.]" (***Id.*** at 15).

On December 16, 2020, Appellee filed another indirect criminal contempt private complaint. In it, Appellee alleged that Appellant had sent an additional letter to her friend's place of employment at St. Luke's Hospital, and the letter was "disturbing" to her friend. (Criminal Contempt Private Complaint, filed 12/16/20, at ¶2). Appellee's complaint included the letter, which speculated about various medical conditions that Appellant believed were affecting him. At the conclusion of the letter, Appellant asked Appellee's friend to contact both Appellee and Appellee's attorney to inform them about Appellant's purported medical conditions.

The court conducted a contempt hearing on March 12, 2021. At the conclusion of the hearing, the court found Appellant guilty of indirect criminal contempt and sentenced him to six (6) months' incarceration. Appellant timely filed a notice of appeal on April 9, 2021. On April 12, 2021, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant timely filed his Rule 1925(b) statement on April 28, 2021.

Appellant now raises one issue for our review:

> Did the trial court err in finding that Appellant violated the PFA order with wrongful intent?

(Appellant's Brief at 4).

On appeal, Appellant contends that he sent a letter to Appellee's friend "for the purpose of passing on urgent concerns about the health of

[Appellant's] family, which included the parties' minor children." (*Id.* at 8). Appellant asserts that "it would take a hyper-literal reading of the PFA order to find wrongful intent simply based on a momentary solicitation of Appellee's health alongside that of their children." (*Id.*) Appellant argues that, "if anything," the letter amounted to a "*de minimis* infraction [of the PFA order that was] insufficient to demonstrate wrongful intent." (*Id.* at 8-9). Appellant concludes that the evidence was insufficient to support a conviction for indirect criminal contempt. We disagree.

"[W]hen reviewing a contempt conviction, much reliance is given to the discretion of the trial judge. Accordingly, we are confined to a determination of whether the facts support the trial court decision." *Commonwealth v. Kolansky*, 800 A.2d 937, 939 (Pa.Super. 2002) (quoting *Williams v. Williams*, 681 A.2d 181, 183 (Pa.Super. 1996), *aff'd*, 554 Pa. 465, 721 A.2d 1072 (1998)). "We will reverse a trial court's determination only when there has been a plain abuse of discretion." *Id.* "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." *Commonwealth v. Griffiths*, 15 A.3d 73, 76 (Pa.Super. 2010) (quoting *Commonwealth v. Dent*, 837 A.2d 571, 577 (Pa.Super. 2003), *appeal denied*, 581 Pa. 671, 863 A.2d 1143 (2004)).

"The purpose of the PFA Act is to protect victims of domestic violence

from those who perpetrate such abuse, with the primary goal of advance prevention of physical and sexual abuse." *E.K. v. J.R.A.*, 237 A.3d 509, 519 (Pa.Super. 2020) (quoting *Buchhalter v. Buchhalter*, 959 A.2d 1260, 1262 (Pa.Super. 2008)).

> Where a PFA order is involved, an [indirect criminal contempt] charge is designed to seek punishment for violation of the protective order. A charge of indirect criminal contempt consists of a claim that a violation of an order or decree of court occurred outside the presence of the court. To establish indirect criminal contempt, the Commonwealth must prove: 1) the order was sufficiently definite, clear, and specific to the contemnor as to leave no doubt of the conduct prohibited; 2) the contemnor had notice of the order; 3) the act constituting the violation must have been volitional; and 4) the contemnor must have acted with wrongful intent.

*Commonwealth v. Lambert*, 147 A.3d 1221, 1226 (Pa.Super. 2016) (internal citations and quotation marks omitted).

"Wrongful intent will be found where the contemnor knows or reasonably should be aware that his conduct is wrongful." *Stewart v. Foxworth*, 65 A.3d 468, 472 (Pa.Super. 2013) (quoting *Himes v. Himes*, 833 A.2d 1124, 1126 (Pa.Super. 2003)). "It is imperative that trial judges use common sense and consider the context and surrounding factors in making their determinations of whether a violation of a court order is truly **intentional** before imposing sanctions of criminal contempt." *Commonwealth v. Haigh*, 874 A.2d 1174, 1177 (Pa.Super. 2005), *appeal denied*, 585 Pa. 686, 887 A.2d 1240 (2005) (emphasis in original).

Instantly, the trial court conducted a contempt hearing on March 12,

2021. At the hearing, Appellee's friend, Marina Mikhalik, testified that: 1) she received a letter that Appellant sent to her place of employment in December 2020; 2) the letter made her feel uncomfortable; and 3) she informed Appellee about the letter and forwarded it to Appellee. (*See* N.T. Hearing, 3/12/21, at 10-11). In the letter, Appellant claimed to "have potentially been poisoned by toxic exposure to benzene[.]" (*Id.* at 13).

Appellant also testified at the hearing, and he admitted sending the letter to Ms. Mikhalik. (*Id.* at 17). Appellant emphasized that his "intent was not clearly to communicate with [Appellee]; it was to have my children and my wife, their health taken care of." (*Id.* at 23). Appellant further explained that there was a "chimney collapse" at the parties' residence over eleven years ago, and he believed that the collapse exposed his family to "neurotoxins," which could cause brain damage or cancer. (*Id.* at 25).

The trial court evaluated the hearing testimony and the letter at issue, concluding that Appellant acted with the requisite wrongful intent:

> The letter that was admitted into evidence as Exhibit "P1" at the March 12, 2021 hearing cannot be viewed in isolation. The PFA Order against [Appellant] has been in effect since 2016 and extended on several occasions. **[Appellant] has not been compliant with the PFA Order since its inception.** Consistently since 2016, [Appellant] has violated the PFA Order through communications with [Appellee] that have been incessant and unrelenting in nature, including and continuing while he is incarcerated in state prison for violating the PFA Order. [Appellant] has repeatedly threatened to kill [Appellee]. [Appellant] violated his bail provisions by contacting [Appellee], violated his probation by contacting [Appellee], alarmed his probation officer with his behavior …, impersonated his

therapist, has made death threats by and through his mother, and has been arrested by the police at [Appellee's] house in violation of the PFA Order. [Appellant], who has been criminally convicted of stalking and harassing [Appellee], has continued unrelentingly to stalk and harass her, even with the PFA Order in place. [Appellant] has been repeatedly warned and counseled by [the trial c]ourt concerning the prohibitions of the PFA Order, and he has been ordered to receive mental health treatment. [Appellant] has repeatedly claimed to have various mental health diagnoses and ailments for which there is absolutely no evidence of record. He has communicated with numerous third parties at their homes and places of employment in an effort to enlist them to help him communicate with [Appellee] in violation of the PFA Order, which resulted in at least one amendment to the Order.

(Trial Court Opinion at 35-36) (emphasis in original).

Our review of the record confirms the court's conclusions. Although Appellant insists that he sent the letter to Ms. Mikhalik for the good faith purpose of giving his children relevant medical information, the court correctly noted that Appellant did not actually provide any evidence to support the purported diagnoses. Instead, Appellant asked Ms. Mikhalik to tell Appellee that she should "expect a letter" from doctors, who would provide additional information about Appellant's medical condition. (**See** Letter marked as Exhibit P1). The letter's closing sentences reveal that Appellant's true purpose in writing to Ms. Mikhalik was to garner sympathy and further his goal of reunification with Appellee and his children: "I love my wife and kids very much, every day I cry because I miss them. Can you imagine my pain?" (**Id.**)

Based upon the court's prior warnings, Appellant knew or should have known that his conduct was wrongful. **See Stewart, supra**. Here, the trial

court used common sense and considered the context and surrounding factors in making its determination that Appellant had committed another contempt. *See Haigh, supra*. Because the facts support the court's decision, we cannot say that it abused its discretion in concluding that Appellant acted with a wrongful intent. *See Kolansky, supra*. Accordingly, no relief is due.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/17/2021