J-S02019-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| GRACE FORCIER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| DAWN BALL | : | |
| | : | |
| Appellant | : | No. 9 EDA 2021 |

Appeal from the Order Entered November 4, 2020
In the Court of Common Pleas of Northampton County
Civil Division at No(s): No. C-48-PF-2020-00249

BEFORE: OLSON, J., KING, J., and McCAFFERY, J.

MEMORANDUM BY KING, J.:                    **FILED APRIL 20, 2022**

Appellant, Dawn Ball ("Daughter"), appeals from the order entered in the Northampton County Court of Common Pleas, under the Protection from Abuse ("PFA") Act,[1] in favor of Appellee, Grace Forcier ("Mother"). We affirm and grant counsel's petition to withdraw.

The relevant facts and procedural history of this appeal are as follows. On April 7, 2020, Mother filed a PFA petition against Daughter. Specifically, Mother alleged that Daughter broke into her residence, destroyed Mother's personal property, and threatened Mother with a knife. Based upon these allegations, the court issued a temporary PFA order and scheduled a hearing on the matter. The temporary PFA order advised Daughter not to contact

_____

[1] 23 Pa.C.S.A. §§ 6101-6122.

Mother by any means.

Prior to the hearing, Mother filed three (3) indirect criminal contempt private complaints. In the complaint filed on May 12, 2020, Mother asserted that Daughter repeatedly made threatening phone calls to her. In the complaint filed on June 1, 2020, Mother claimed that Daughter went to the post office and forwarded Mother's mail without permission. In the complaint filed on August 25, 2020, Mother stated that Daughter posted unflattering lies about her on a website.

Following several continuances, the court conducted a hearing on November 4, 2020. At that time, the court received testimony from Mother, who appeared *pro se*. Daughter appeared with counsel, but counsel advised her not to testify due to pending criminal charges. (**See** N.T. Hearing, 11/4/20, at 9). After receiving Mother's testimony, the court issued a final PFA order. The order, which remains in effect for three (3) years, directed Daughter not to abuse, harass, stalk, or threaten Mother. Additionally, the court found Daughter guilty of indirect criminal contempt based upon Mother's May 2020 complaint only. The court sentenced Daughter to thirty (30) days' imprisonment, and it dismissed the remaining contempt complaints.

Daughter timely filed a *pro se* notice of appeal on November 23, 2020. On December 2, 2020, the court ordered Daughter to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. On December 21, 2020, Daughter timely filed a *pro se* Rule 1925(b) statement.

On February 26, 2021, Daughter filed a *pro se* application for the appointment of counsel in this Court. In response, we directed the trial court to determine Daughter's eligibility for appointed counsel. By order entered March 31, 2021, the court appointed current counsel to represent Daughter on appeal.[2] Counsel subsequently filed a petition to withdraw and an ***Anders***[3] brief with this Court. Counsel filed an amended withdrawal petition on September 27, 2021.

As a preliminary matter, counsel seeks to withdraw representation pursuant to ***Anders*** and ***Commonwealth v. Santiago***, 602 Pa. 159, 978 A.2d 349 (2009). ***Anders*** and ***Santiago*** require counsel to: (1) petition the Court for leave to withdraw, certifying that after a thorough review of the record, counsel has concluded the issues to be raised are wholly frivolous; (2) file a brief referring to anything in the record that might arguably support the appeal; and (3) furnish a copy of the brief to the appellant and advise her of her right to obtain new counsel or file a *pro se* brief to raise any additional points the appellant deems worthy of review. ***Santiago, supra*** at 173-79, 978 A.2d at 358-61. Substantial compliance with these requirements is sufficient. ***Commonwealth v. Wrecks***, 934 A.2d 1287, 1290 (Pa.Super. 2007). After establishing that counsel has met the antecedent requirements

---

[2] Daughter previously filed a *pro se* petition for leave to proceed *in forma pauperis*, which the court granted on December 2, 2020.

[3] ***Anders v. California***, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

to withdraw, this Court makes an independent review of the record to confirm that the appeal is wholly frivolous.[4] **_Commonwealth v. Palm_**, 903 A.2d 1244, 1246 (Pa.Super. 2006). **_See also Commonwealth v. Dempster_**, 187 A.3d 266 (Pa.Super. 2018) (_en banc_).

In **_Santiago, supra_**, our Supreme Court addressed the briefing requirements where court-appointed appellate counsel seeks to withdraw representation:

> Neither **_Anders_** nor [**_Commonwealth v. McClendon_**, 495 Pa. 467, 434 A.2d 1185 (1981)] requires that counsel's brief provide an argument of any sort, let alone the type of argument that counsel develops in a merits brief. To repeat, what the brief must provide under **_Anders_** are references to anything in the record that might arguably support the appeal.
>
> \*   \*   \*
>
> Under **_Anders_**, the right to counsel is vindicated by counsel's examination and assessment of the record and counsel's reference to anything in the record that arguably supports the appeal.

**_Santiago, supra_** at 176, 177, 978 A.2d at 359, 360. Thus, the Court held:

> [I]n the **_Anders_** brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a

_____

[4] We note that Daughter's _pro se_ notice of appeal does not specify whether she intended to appeal from the final PFA order or the order finding her in indirect criminal contempt, both of which were filed at the same trial court docket number. Based upon our review of Daughter's _pro se_ Rule 1925(b) statement, it appears that she wanted to challenge both orders. Likewise, counsel's **_Anders_** brief includes argument surrounding both orders. In light of the applicable case law governing this Court's review in an **_Anders_** scenario, we will examine the propriety of both orders as part of our independent review of the record.

summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Id.* at 178-79, 978 A.2d at 361.

Instantly, appellate counsel has filed a petition to withdraw and ***Anders*** brief. The brief states counsel's conclusion that the appeal is wholly frivolous. Counsel supplied Daughter with a copy of the ***Anders*** brief. Counsel also provided Daughter with a letter explaining her right to retain new counsel to pursue the appeal or to proceed *pro se*.

In the ***Anders*** brief, counsel provided a statement of facts and procedural history of the case. Counsel's argument refers to relevant law and portions of the record that might arguably support Daughter's issues. Counsel further states the reasons for his conclusion that the appeal is wholly frivolous. Therefore, counsel has substantially complied with the technical requirements of ***Anders*** and ***Santiago***.

Daughter has not responded to the ***Anders*** brief *pro se* or with newly retained private counsel. Counsel raises the following issues on Daughter's behalf:

Whether [Mother's] testimony was credible?

Whether there was sufficient evidence to grant a [PFA] final order?

(**Anders** Brief at 3).

On appeal, Daughter argues that the trial court should not have found Mother's testimony credible. Daughter emphasizes Mother's responses to the questions posed during cross-examination, where Mother admitted to a prior conviction for *crimen falsi*. Additionally, Daughter contends that the evidence was insufficient to support both the final PFA order and the finding of indirect criminal contempt. We disagree.

When examining a challenge to the sufficiency of the evidence supporting a PFA order, our standard of review is as follows:

> When a claim is presented on appeal that the evidence was not sufficient to support an order of protection from abuse, we review the evidence in the light most favorable to the petitioner and granting her the benefit of all reasonable inferences, determine whether the evidence was sufficient to sustain the trial court's conclusion by a preponderance of the evidence. This [C]ourt defers to the credibility determinations of the trial court as to witnesses who appeared before it.

**Fonner v. Fonner**, 731 A.2d 160, 161 (Pa.Super. 1999) (internal citations and quotation marks omitted).

"The purpose of the [PFA] Act is to protect victims of domestic violence from those who perpetrate such abuse, with the primary goal of advance prevention of physical and sexual abuse." **E.K. v. J.R.A.**, 237 A.3d 509, 519 (Pa.Super. 2020) (quoting **Buchhalter v. Buchhalter**, 959 A.2d 1260, 1262 (Pa.Super. 2008)). The PFA Act defines abuse as follows:

### § 6102. Definitions

**(a) General rule.—**The following words and phrases when used in this chapter shall have the meanings given to them in this section unless the context clearly indicates otherwise:

**"Abuse."** The occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood:

\* \* \*

(2) Placing another in reasonable fear of imminent serious bodily injury.

23 Pa.C.S.A. § 6102(a)(2).

"In the context of a PFA case, the court's objective is to determine whether the victim is in reasonable fear of imminent serious bodily injury…." ***Buchhalter, supra*** at 1263 (quoting ***Raker v. Raker***, 847 A.2d 720, 725 (Pa.Super. 2004)). "The intent of the alleged abuser is of no moment." ***Id.*** "While physical contact may occur, it is not a prerequisite for a finding of abuse under [Section] 6102(a)(2) of the [PFA] Act." ***Fonner, supra*** at 163. "[T]he victim of abuse need not suffer actual injury, but rather be in reasonable fear of imminent serious bodily injury." ***Burke ex rel. Burke v. Bauman***, 814 A.2d 206, 208 (Pa.Super. 2002) (quoting ***DeHaas v. DeHaas***, 708 A.2d 100, 102 (Pa.Super. 1998), *appeal denied*, 557 Pa. 629, 732 A.2d 615 (1998)).

Additionally, "[w]hen reviewing a contempt conviction, much reliance is given to the discretion of the trial judge. Accordingly, we are confined to a determination of whether the facts support the trial court decision." ***Commonwealth v. Kolansky***, 800 A.2d 937, 939 (Pa.Super. 2002) (quoting

*Williams v. Williams*, 681 A.2d 181, 183 (Pa.Super. 1996), *aff'd*, 554 Pa. 465, 721 A.2d 1072 (1998)). "We will reverse a trial court's determination only when there has been a plain abuse of discretion." *Id.* "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." *Commonwealth v. Griffiths*, 15 A.3d 73, 76 (Pa.Super. 2010) (quoting *Commonwealth v. Dent*, 837 A.2d 571, 577 (Pa.Super. 2003), *appeal denied*, 581 Pa. 671, 863 A.2d 1143 (2004)).

> Where a PFA order is involved, an [indirect criminal contempt] charge is designed to seek punishment for violation of the protective order. A charge of indirect criminal contempt consists of a claim that a violation of an order or decree of court occurred outside the presence of the court. To establish indirect criminal contempt, the [petitioner] must prove: 1) the order was sufficiently definite, clear, and specific to the contemnor as to leave no doubt of the conduct prohibited; 2) the contemnor had notice of the order; 3) the act constituting the violation must have been volitional; and 4) the contemnor must have acted with wrongful intent.

*Commonwealth v. Lambert*, 147 A.3d 1221, 1226 (Pa.Super. 2016) (internal citations and quotation marks omitted).

Instantly, Mother provided the following testimony about the incident that prompted her to file the PFA petition:

> This is exactly what happened. I was in bed. The dog starts barking. I get out of bed to see what's the matter. I go over to the window. She's breaking in downstairs. And when she got in downstairs, because we have a staircase, I said, "[Daughter], get out of this house right now." She

said—she started running after me with a knife.

* * *

She ran after me with a knife and something else in her hand. And I started running because I know she is not all there. And I ran into my bedroom. I locked the door. I hear, crash, banging, screaming. … I was nervous as anything dialing the 911. And I hear all scratches, her trying to get in. But I held the door closed and I locked it and she was trying to break in the door. And I heard her smashing everything in the hall upstairs….

Then she apparently—the police came. She must have already left because I didn't know, I was still in my room crying hysterically and on the phone with 911.

(N.T. Hearing at 2-3).

Here, Mother recounted a violent episode where Daughter broke into Mother's home and chased Mother while brandishing a knife. This behavior prompted Mother to lock herself in a bedroom and desperately call 911. Mother's testimony alone established her reasonable fear of imminent serious bodily injury. **See Burke, supra**. To the extent Daughter insists that the court should not have credited Mother's testimony, the court was aware of Mother's *crimen falsi* conviction. (**See** N.T. Hearing at 11-12). Likewise, the court was aware of Daughter's theory of the case, which is that she went to Mother's home to reclaim certain possessions that Mother had wrongfully taken from her. (**Id.** at 6). Nevertheless, the court found Mother credible, and we see no reason to negate the court's determination. **See Fonner, supra**.

Regarding the finding of indirect criminal contempt, the court initially

confirmed that Daughter was properly served with the temporary PFA order in April 2020. (*See* N.T. Hearing at 13). Mother subsequently testified about Daughter's behavior in May 2020, indicating that Daughter "constantly" called from an unknown telephone number. (*Id.* at 14). During these calls, Daughter threatened to "get even" with Mother if Mother did not provide favorable testimony for Daughter in an unrelated legal proceeding. (*Id.*) Daughter also threatened to kill Mother and her loved ones. (*Id.*)

The court evaluated this testimony and concluded that Daughter committed a volitional act with the requisite wrongful intent. (*See* Trial Court Opinion, filed December 30, 2020, at 5). "Given the significance of [Daughter's] threats to cause serious bodily harm to [Mother] and her family," the court again found Mother to be credible. (*Id.* at 3). Our review of the record confirms the court's conclusions. Because the record supports the court's decision, we cannot say it abused its discretion in finding that Daughter had committed indirect criminal contempt. *See Lambert, supra*; *Kolansky, supra*. Accordingly, we affirm and grant counsel's petition to withdraw.

Order affirmed. Petition to withdraw is granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>4/20/2022</u>