J-S28034-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
ERIC RIVERA :
:
Appellant     No. 1672 MDA 2024

Appeal from the Judgment of Sentence Entered October 9, 2024
In the Court of Common Pleas of Lancaster County Civil Division at
No(s):  CI-24-02619

BEFORE:  BOWES, J., OLSON, J., and KING, J.

MEMORANDUM BY KING, J.:     **FILED: SEPTEMBER 19, 2025**

Appellant, Eric Rivera, appeals from the judgment of sentence entered in the Lancaster County Court of Common Pleas, following his bench trial conviction for indirect criminal contempt of court ("ICC") for violating an order under the Protection from Abuse ("PFA") Act.[1]  We affirm.

The trial court set forth the relevant facts and procedural history of this case as follows:

> [Miriah Shank ("Victim")] was granted a temporary PFA order against the [Appellant] with the matter scheduled for a final hearing on April 17, 2024.  On that date, upon [Victim's] request, the matter was continued and rescheduled to be heard on May 29, 2024.  Before the final hearing date, an ICC complaint was filed against the [Appellant] on May 6, 2024.  On May 15, 2024, after a hearing, [Appellant] was found guilty of ICC and sentenced to 6 months of probation (to terminate at 3 months without

---

[1] 23 Pa.C.S.A. §§ 6101-6122.

any violations), ordered to pay costs, and subject to the special conditions of probation or parole for domestic violence offenders.

A subsequent ICC complaint and parole violation was filed on June 24, 2024, and scheduled to be heard on July 1, 2024. After a brief continuance was granted, on July 8, 2024, [Appellant] plead *nolo contendere* to one count of ICC and was sentenced to time served and paroled immediately. [Appellant's] corresponding parole violation was addressed by the court separately, finding that [Appellant] had violated his probation and sentencing him to a new period of 6 months of probation and costs.

[Additionally, on July 8, 2024, a final PFA was entered upon agreement of the parties.] Pursuant to the … final PFA order … [Appellant] was prohibited from having "any contact with [Victim] directly or indirectly... at any location, including but not limited to any contact at [Victim's] or other protected party's school, business, or place of employment." [(Final PFA Order, filed 7/8/24, at 2) (unpaginated).] Under paragraph [seven] of the order, contact was only permitted relating to custody as follows: "[Appellant] may be in the same vicinity as [Victim] for the limited purpose of custody exchanges inside the Lancaster City Police Station. These exchanges shall be civil, non-violent, non-harassing exchanges. [Appellant may not communicate with Victim during these exchanges.] Additionally, the parties may communicate via Appclose about the child only." [(***Id.*** at 3).]

The ICC complaint that formed the basis for the conviction at issue was filed on October 3, 2024, regarding [an] incident on September 27, 2024. A hearing on the matter was scheduled for October 9, 2024[.] …

At the hearing, [Victim] and Officer Alexander Hartman, the officer that filed the ICC charge, both offered testimony on behalf of the Commonwealth. On direct examination, Victim testified regarding the incident at issue, having occurred at approximately 5:00 p.m. at a custody exchange on September 27, 2024, at Lancaster County Police Station. Victim testified credibly that after the custody exchange within the police station, when Victim was putting their child

into her vehicle, [Appellant] drove up to her vehicle. From within [Appellant's] car, he said hello to their child[. T]hen, after the Victim shut the car door, [Appellant] screamed at her "you stupid bitch." Victim made an in-court identification of [Appellant], confirming that she saw and heard [Appellant] make the derogatory statement.

On cross examination, Victim testified to the parties having an existing custody order where custody alternated each weekend. [Appellant] was to exercise custody on the weekend of October 5th, the weekend following the exchange on September 27th. Victim confirmed that her daughter's (from a different Father) birthday was on October 5th and that her and [Appellant's] child were then together for the birthday, as [Appellant] was incarcerated following his arrest for the underlying ICC charge on October 3rd. Victim also indicated that the incident on September 27th was the first time [Appellant] had resorted to "loud, explicative language" at a custody exchange. On re-direct examination, … Victim confirmed that [Appellant] has yelled at her or called her "a stupid bitch and things like that" [on other occasions in the past] and that it made her "scared and upset." When asked why she didn't report [Appellant's] conduct immediately to the police at the station, Victim explained that she was trying to protect her child by not exposing him to the police interaction and took him to her parents' house before making the report.

On direct examination, Officer Alexander Hartman, testified that he spoke with Victim over the phone regarding the incident on September 27th and subsequently filed the charges against [Appellant]. …

For [Appellant's] case-and-chief, [Appellant's] counsel first called Corrine Fernandez, a third party who had custody exchanges at the Lancaster City Police Station at the same time as the parties and was present during the incident on September 27th. Specifically, [Ms.] Fernandez testified:

    A.    Well, I was waiting for my exchange and I seen [Appellant] drive off in his car, say bye to his son, and that was it.

    Q.    Okay. Now, were you close enough to hear any

- 3 -

conversation that would have occurred?

A. Yes.

Q. Did you hear him scream you stupid bitch?

A. No.

Q. So did you hear him scream anything?

A. No.

Q. Would you have been able to hear had he screamed?

A. Yes.

[(N.T. ICC Hearing, 10/9/24, at 32-33).]

On cross examination, [Ms.] Fernandez testified that she was standing outside her car in the parking lot when she … saw [Appellant] drive away and wave to his son, but did not hear him yell anything. … [Appellant did not testify.]

Following the conclusion of [Appellant's] case-in-chief, the Commonwealth and [Appellant's] counsel offered brief closing remarks. [Appellant] made two arguments. First, [Appellant] argued that the testimony of [Ms.] Fernandez was dispositive of the case as her account contradicted [Victim's]. Second, [Appellant] argued that [Victim] had motive to report [Appellant] for … ICC so that she could keep the shared child over [Appellant's] custody weekend in order to celebrate together her other daughter's birthday. In response, the Commonwealth argued that [Victim's] alleged motivation to allege false allegations and perjure herself for additional custody time was not consistent with the evidence or [Victim's] testimony and demeanor.

At the conclusion of the hearing, the court found [Appellant] guilty on one count of [ICC]. In support of its ruling, the [c]ourt stated, "I resolved all issues of credibility … [j]ust because the independent witness testified that she didn't hear it doesn't mean that it didn't occur." [(*Id.* at 38).] Addressing [Appellant's] underlying conduct, the court

continued by stating, "[t]he plain language of the order says the [Appellant] may not communicate with [Victim] during these exchanges. So quite frankly, you know, whether he yelled it or didn't yell it, or whether he used nasty language, he violated the order by having communications with her during the exchanges." [(*Id.* at 39).] Accordingly, on the single count for [ICC], the court sentenced [Appellant] to thirty (30) days' time served in Lancaster County Prison, a $300 fine, court costs, and made him eligible for work release. Additionally, pertaining to the PFA, upon request by the Commonwealth, the final PFA Order entered [on] July 8, 2024, was extended by an additional three (3) years, now set to expire on July 8, 2030.

Following sentencing, [Appellant] filed a motion to vacate verdict as against the weight of the evidence on October 17, 2024. Upon review of the motion and the available record, the court denied [Appellant's] motion on October 18, 2024. [Appellant] then filed a notice of appeal on November 8, 2024.

(Trial Court Opinion, filed 12/23/24, at 2-6) (footnotes and some citations omitted). On November 18, 2024, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Appellant timely complied on December 6, 2024.

Appellant raises the following issue for our review:

Did the trial court err in finding [Appellant] guilty of [ICC] against the weight of the evidence of record?

(Appellant's Brief at 6).

Appellant asserts that Ms. Fernandez, an independent bystander who had no vested interest in the outcome of the proceedings, testified that she was within earshot of the parties and did not hear Appellant scream "you stupid bitch" at Victim. Appellant claims that Victim had a motive to lie about

the incident in order to obtain physical custody over the parties' son on the weekend of her daughter's birthday party. Appellant argues that the court's decision to credit Victim's biased testimony over that of an impartial, third-party citizen who directly contradicted Victim's testimony, demonstrated partiality. Appellant concludes that the verdict was against the weight of the evidence and this Court should vacate his judgment of sentence. We disagree.

Our standard of review regarding challenges to the weight of the evidence is as follows:

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the .... verdict if it is so contrary to the evidence as to shock one's sense of justice.
>
> *Commonwealth v. Small*, 559 Pa. 423, [435,] 741 A.2d 666, 672-73 (1999). Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Champney*, 574 Pa. 435, 444, 832 A.2d 403, 408 (2003), *cert. denied*, 542 U.S. 939, 124 S.Ct. 2906, 159 L.Ed.2d 816 (2004) (most internal citations omitted). Moreover, "[a] verdict is not contrary to the weight of the evidence because of a conflict in testimony or because the reviewing court on the same facts might have arrived at a different conclusion than the fact[-]finder." *Commonwealth v. Morales*, 625 Pa. 146, 164, 91

A.3d 80, 91 (2014) (citing **Commonwealth v. Tharp**, 574 Pa. 202, 218, 830 A.2d 519, 528 (2003)).

Additionally, "[w]hen reviewing a contempt conviction, much reliance is given to the discretion of the trial judge.  Accordingly, we are confined to a determination of whether the facts support the trial court decision." **Commonwealth v. Kolansky**, 800 A.2d 937, 939 (Pa.Super. 2002) (quoting **Williams v. Williams**, 681 A.2d 181, 183 (Pa.Super. 1996), *aff'd*, 554 Pa. 465, 721 A.2d 1072 (1998)).  "We will reverse a trial court's determination only when there has been a plain abuse of discretion."  **Id.**  "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record."  **Commonwealth v. Griffiths**, 15 A.3d 73, 76 (Pa.Super. 2010) (quoting **Commonwealth v. Dent**, 837 A.2d 571, 577 (Pa.Super. 2003), *appeal denied*, 581 Pa. 671, 863 A.2d 1143 (2004)).

"The purpose of the PFA Act is to protect victims of domestic violence from those who perpetrate such abuse, with the primary goal of advance prevention of physical and sexual abuse." **E.K. v. J.R.A.**, 237 A.3d 509, 519 (Pa.Super. 2020) (quoting **Buchhalter v. Buchhalter**, 959 A.2d 1260, 1262 (Pa.Super. 2008)).

> Where a PFA order is involved, an [indirect criminal contempt] charge is designed to seek punishment for violation of the protective order.  A charge of indirect criminal contempt consists of a claim that a violation of an

order or decree of court occurred outside the presence of the court. To establish indirect criminal contempt, the Commonwealth must prove: 1) the order was sufficiently definite, clear, and specific to the contemnor as to leave no doubt of the conduct prohibited; 2) the contemnor had notice of the order; 3) the act constituting the violation must have been volitional; and 4) the contemnor must have acted with wrongful intent.

**Commonwealth v. Lambert**, 147 A.3d 1221, 1226 (Pa.Super. 2016) (internal citations and quotation marks omitted).

Instantly, the Commonwealth put forth evidence to establish that Appellant spoke to Victim in a derogatory manner in violation of the PFA order, which had prohibited Appellant from communicating with Victim during custody exchanges. The trial court, who had the opportunity to observe the witnesses, found Victim's testimony to be "wholly credible." (**See** Trial Court Opinion at 8). The court further found that Ms. Fernandez's testimony was not dispositive in this matter, noting that "just because Ms. Fernandez did not hear the statement does not mean it was not, in fact, said." (**Id.**) The trial court, as factfinder, was free to accept Victim's testimony over that of Appellant's witness. **See Morales, supra**; **Champney, supra**. Additionally, the record does not provide any support for Appellant's assertion that the court displayed partiality. The mere fact that Appellant disagrees with the court's credibility determinations does not demonstrate that the court exhibited partiality or exercised judgment that is manifestly unreasonable. **See Griffiths, supra**. On this record, we see no reason to disrupt the court's ruling on Appellant's weight claim, as we cannot say that the court abused its

discretion in denying Appellant's weight claim. **_See Champney, supra_**.

Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 09/19/2025