510 A.2d 796

**COMMONWEALTH of Pennsylvania**

v.

**Augustus COLLIER.**

**Appeal of Thomas INNES, Esquire.**

Superior Court of Pennsylvania.

Argued April 9, 1986.

Filed June 3, 1986.

544

Leonard Sosnov, Assistant Public Defender, Philadelphia, for appellant.

Before CIRILLO, President Judge, and ROWLEY and WIEAND, JJ.

WIEAND, Judge:

Thomas Innes, Esquire, while representing Augustus Collier, a criminal defendant charged with six robberies, was twice held in contempt of court and fined. He was summarily held in contempt of court during a suppression hearing when he pursued requests for evidence determined by the court to be irrelevant to the suppression issue. Later, during jury selection, he was again held in contempt for his insistence that Collier should be allowed to leave the courtroom to go to the bathroom. Innes was ordered to pay a fine of $500.00 for the first offense and a fine of $100.00 for the second offense. He argues on appeal that the court's contempt findings were unwarranted. We are constrained to agree. His conduct, if rude and obnoxious, was not contemptuous.

"The power of the several courts of this Commonwealth to issue attachments and to inflict summary punishments for contempts shall be restricted to the following cases: ... (3) The misbehavior of any person in the presence of the court, thereby obstructing the administration of justice." 42 Pa.C.S. § 4131(3).[1] This statutory offense "requires proof beyond a reasonable doubt of 1) misconduct, 2) in the presence of the court, 3) committed with intent to obstruct the proceedings, which 4) obstructs the administration of justice." *Commonwealth v. Cameron*, 501 Pa. 572, 575, 462 A.2d 649, 650 (1983). See: *In re Nugent*, 494 Pa. 2, 8, 427 A.2d 1154, 1157 (1980); *Commonwealth v. Rubright*, 489 Pa. 356, 363, 414 A.2d 106, 110 (1980); *In re Cogan*, 485 Pa. 273, 281, 401 A.2d 1142, 1146 (1979); *Commonwealth v. Garrison*, 478 Pa. 356, 371, 386 A.2d 971, 979 (1978); *In re Johnson*, 467 Pa. 552, 557, 359 A.2d 739, 742 (1976); *McMillan v. Mountain Laurel Racing, Inc.*, 467 Pa. 266, 271, 356 A.2d 742, 745 (1976); *Kinter v. Kinter*, 348 Pa.Super. 27, 28, 501 A.2d 281, 282 (1985); *Commonwealth v. Restifo*, 339 Pa.Super. 225, 228, 488 A.2d 633, 635 (1985).

1. While the trial judge did not specify which section of the statute Innes had allegedly violated, it seems clear from the record that section three was the only section having possible application.

No satisfactory definition of contemptuous misconduct has been developed. Perhaps the best definition is that misconduct is behavior that is inappropriate to the role of the actor.... An attorney engages in misconduct if his behavior is calculated to hinder the search for truth.... Misconduct occurs in the presence of the court if the court itself witnesses the conduct or if the conduct occurs outside the courtroom but so near thereto that it obstructs the administration of justice.... A contemner acts with wrongful intent if he "knows or should reasonably be aware that his conduct is wrongful." ... An obstruction of justice is a significant disruption of judicial proceedings.... *What is required is a showing of actual, imminent prejudice to a fair proceeding or to preservation of the court's authority.... This danger "must not be remote or even probable; it must immediately imperil."*

*Commonwealth v. Garrison, supra* 478 Pa. at 372, 386 A.2d at 979 (citations omitted) (emphasis added).

Innes was first held in contempt for conduct occurring during the suppression hearing. There, while questioning a police officer regarding identification statements made by victims of the robberies after having examined photographs, Innes learned that witnesses other than victims had also been shown the same photographic array. The following occurred during defense cross-examination of a police witness:

Q. Who else did you go to?

MR. WILLIAMS: Objection.

THE COURT: Sustained.

BY MR. INNES:

Q. When you went to the other people, did they make identification or not make identification?

MR. WILLIAMS: Objection.

THE COURT: Sustained.

MR. INNES: Judge, that goes to the issue.

THE COURT: No, it doesn't go to any issue at all. I have ruled on the objection. I will not tolerate any argument. Ask your next question.

MR. INNES: I make a motion for production of those exculpatory statements under Brady versus Maryland.

THE COURT: Why do you want this?

MR. INNES: I would be happy to tell you at side bar with the stenographer.

THE COURT: You tell me now.

MR. INNES: I don't want to tell you in front of the witness.

THE COURT: You are using this for a discovery proceeding.

MR. INNES: That is not correct, Judge.

THE COURT: I have ruled. Now, sit down and ask your next question.

MR. INNES: That is not correct.

THE COURT: Sit down and ask your next question.

MR. INNES: My motion for the—

THE COURT: Don't argue any further with me.

MR. INNES: Judge, I will tell you why.

THE COURT: You are not going to tell me anything. Please sit down.

MR. INNES: Judge, I want those pictures. The reason I want those pictures is because if there are other crimes of these same M.O. as this crime in which there are not identifications or on which the people say none of these people in this photo display were the person, then I have a right to get that information to show that Mr. Collier may well not have been involved in these cases as well.

THE COURT: What you are telling me now is you want to do an investigation and you want to use the motion to suppress identification made in six cases in order to do the investigation and find out more about your case. I have suspected that from the very beginning, that you have not in good faith sought a suppression hearing but have used it continually for discovery purposes. I sus-

pected that from the beginning, and now I know it to be so. I am not going to allow you to use this courtroom to do investigation that you think necessary and you want to have done. By your actions so far, you have been in contempt constantly. I will have no more arguing about it, and you will now proceed to the next question.

MR. INNES: Well, Judge—

THE COURT: No more arguing.

MR. INNES: If I have been in contempt, I ask the Court to put on the record how I have been in contempt of this court.

THE COURT: I am holding you in contempt. I will have a hearing on this after the trial. Now, in the meantime, you sit here and you ask questions. I will not tolerate any further argument.

(N.T. 1/25/82 at 348–351).

Our examination of this interchange between the hearing judge and defense counsel, as well as those portions of the record which precede and follow the same, fails to disclose contemptuous conduct. There was no basis for finding that counsel intended to disrupt the proceedings or that he did so in fact. "Attorneys have a right to be persistent, vociferous, contentious, and imposing, even to the point of appearing obnoxious, when acting in their client's behalf." *Commonwealth v. Garrison, supra,* 478 Pa. at 374, 386 A.2d at 980, quoting *In re Dillinger,* 461 F.2d 389, 400 (7th Cir.1972). In *Commonwealth v. Restifo, supra* 339 Pa.Super. at 229–230, 488 A.2d at 635–636, this Court said:

"If a lawyer can be denied the opportunity even to address the court on the subject of what he conceives to be valid objection, it is hard to imagine what part of his function as advocate is left to him." *In the Matter of Nugent,* 494 Pa. 2, 7–8, 427 A.2d 1154, 1157 (1980), quoting *Edmunds v. Chang,* 365 F.Supp. 941, 948 (D.C. Hawaii 1973), *rev'd on other grounds,* 509 F.2d 39 (9th Cir.1975), *cert. denied,* 423 U.S. 825, 96 S.Ct. 39, 46 L.Ed.2d 41 (1975). It is the responsibility of counsel to represent zealously, but with due regard for the dignity

of the judicial process, the position of his or her client. *Commonwealth v. Rubright*, 489 Pa. 356, 364, 414 A.2d 106, 110 (1980). A trial court will not be permitted to stifle an attorney's advocacy by refusing to allow an objection, and a request intended to perfect the record for subsequent review will not support a conviction for contempt. See and compare: *In the Matter of Nugent, supra.* Mere affront to the trial judge is not enough. Remarks that are injudicious, or even disrespectful, will not, without more, justify a summary conviction for contempt of court. *In the Matter of Campolongo, supra* 495 Pa. [627] at 633, 435 A.2d [581] at 584 [ (1981) ]; *Commonwealth v. Garrison*, 478 Pa. 356, 373, 386 A.2d 971, 979 (1978). Inappropriate and even ill-mannered conduct which does not obstruct or delay the trial "falls short of that misbehavior which may be punished under [42 Pa.C.S. § 4131(3) ]." *Commonwealth v. Rubright, supra* 489 Pa. at 364, 414 A.2d at 110. "Judges are supposed to be [persons] of fortitude, able to thrive in a hearty climate. Trial courts ... must be on guard against confusing offenses to their sensibilities with obstruction to the administration of justice." *Commonwealth v. Stevenson*, 482 Pa. 76, 96, 393 A.2d 386, 396 (1978) (Manderino, J. dissenting), quoting *In the Matter of Little*, 404 U.S. 553, 555, 92 S.Ct. 659, 660, 30 L.Ed.2d 708, 711 (1972).

Assuming, without deciding, that Innes was improperly using cross-examination of a police witness to discover the existence of evidence which was arguably exculpatory, the remedy was, as the hearing court recognized, to sustain objections to questions irrelevant to the suppression issue. It does not follow that counsel's continued assertion, with legal argument, that he should be allowed to continue his line of inquiry, was intended to obstruct or did obstruct judicial proceedings. Counsel's conduct did not immediately imperil the fairness of the proceeding or the preservation of the court's authority.

■ The second finding of contempt was made during the selection of a jury to try the charges against Collier. When Collier expressed a need to urinate, Innes made a request that he be taken from the courtroom to a bathroom. The following then occurred:

MR. INNES: My client tells me he has to use the bathroom fairly badly at this time.

. . . .

MR. INNES: I want to say something.

THE COURT: Sit down.

MR. INNES: I think what you are trying to do is intimidate me and trying to intimidate my client not to have me represent him and create—

THE COURT: I want to make sure this thing is not delayed unnecessarily.

MR. INNES: You are trying to create a rift between me and my client, and I would ask you if you have anything to say about your personal feelings about me, I would ask you to do that at side bar.

THE COURT: I won't do anything at side bar with you.

(A short recess was taken.)

THE COURT: First of all, I want this record to show we do not have toilet facilities, nor do we have a room to place the jurors in. The jurors are all out in the hall. In order to allow the man to go to the lavatory, it will mean removing all the jurors, taking him then upstairs, and we will lose considerable time. It has been the practice here that we have a can back here in which the Court Crier allows the person to urinate in the can, and then the Court Crier is the one who removes the can from the courtroom. This is done behind a screen and in complete privacy. It has been done before, and I will allow it to happen now and it should happen now. Did you tell me you are not going to allow your client to urinate there?

MR. INNES: My client does not wish to be put through that kind of a disgrace in a courtroom. First of all, it was not a can, it was a styrofoam cup.

THE COURT: Are you telling me you will not allow your client to do that?

MR. INNES: My client says he wishes to go upstairs like a human being and not like an animal into a trough.

THE COURT: What are you telling me, I am instructing your client to use the facilities we have here? We do it all the time and never had a complaint by a lawyer before.

MR. INNES: I am asking Mr. Williams if he has an objection to allowing my client to go upstairs to go to the Men's Room.

THE COURT: It is not his objection. I am deciding how this is being run.

MR. INNES: In a civilized manner.

THE COURT: Did I understand you said you wouldn't allow your client to urinate there?

MR. INNES: It is up to my client what he wishes to do.

THE COURT: I heard you say this. Is that what you wish?

MR. INNES: I said it is up to my client what he wishes to do.

THE COURT: Did I hear you say you would not allow this to be done?

MR. INNES: I said it is up to my client what he wishes to do.

THE COURT: Ask your client if he wants to urinate?

THE DEFENDANT: I don't want to use a cup. I want to go up to the Men's Room upstairs.

THE COURT: I heard you tell your man—you told the Court Officer you would not allow your client to do it.

(N.T. 1/26/86 at 46–51).

It may be that the client's expressed desire to be allowed to use the bathroom caused inconvenience to the court. Still, the record discloses that the disagreement occurred during a recess. Therefore, it is difficult to find a disruption of judicial proceedings. Moreover and in any event, it seems clear that counsel was not guilty of misconduct that

was contemptuous or which was intended to obstruct or destroy the fairness of the trial. Counsel violated neither order nor command of the court. He sought to protect the dignity of his client. We are constrained to hold, therefore, that counsel did not exceed the limits of his proper role. See: *Commonwealth v. Garrison, supra* (attorney's conduct in objecting to having client stand to be identified by the jury and asking court if client was "to be flagellated in front of the jury" was held not to be contemptuous because it did not exceed outermost limits of attorney's role).

The judgments of sentence for contempt are reversed and set aside.