COMMONWEALTH of Pennsylvania,
Appellee,

v.

**Rayfort ODOM, Appellant.**

Superior Court of Pennsylvania.

Argued June 8, 2000.
Filed Nov. 1, 2000.
Reargument Denied Jan. 8, 2001.

Karl Baker, Public Defender, Philadelphia, for appellant.

Catherine L. Marshall, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before JOHNSON, STEVENS and BECK, JJ.

BECK, J.:

¶ 1 Rayfort Odom appeals from the judgment of sentence imposed after he was held in contempt of court on July 29, 1999. We reverse.

¶ 2 Odom was arrested on September 19, 1998 and charged with burglary and related offenses. He was scheduled to be tried on January 11, 1999. However, two

continuances, one requested by each party, resulted in a June 15, 1999 trial date. On that date, after a colloquy, the trial court accepted Odom's waiver of his right to a jury trial and he signed a written waiver. The Commonwealth then established that the eyewitness, who earlier had failed to appear, was dead, and moved to admit his preliminary hearing testimony. Odom's counsel, an attorney from the Defender Association of Philadelphia ("Defenders"), objected and asked for a continuance to provide relevant case law to the court. The court granted the request.

¶ 3 The case was rescheduled for July 29, 1999; late that afternoon, Odom was brought into court. Counsel, a different attorney from the Defenders, immediately informed the court that Odom was requesting a jury trial. The trial judge granted the request but expressed dismay at the delay.

¶ 4 The Commonwealth asked to proceed with the unresolved pre-trial motion. In the ensuing dialogue, it became clear that Odom's counsel did not know that his client had previously waived a jury trial or that a continuance had been granted at prior counsel's request.

¶ 5 Appellant, with permission, addressed the court. He expressed frustration with his representation by the Defenders and raised two legal questions. He also acknowledged that he had not discussed the jury trial issue with counsel when they met a week earlier. The court asked about Odom's prior contact with the criminal justice system. After learning that he had previously been convicted for contempt, had pled guilty to a number of theft and burglary charges and, on all those occasions, been represented by the Defenders Association, the court concluded that the jury demand was a delay tactic. Odom was found guilty of criminal contempt and sentenced to five months and twenty-nine days imprisonment. He now appeals.

¶ 6 On appeal, Odom argues that the evidence was insufficient to find him guilty of direct criminal contempt. He specifically claims that he did not perform any contemptuous act, did not possess the requisite intent to obstruct justice, and did not obstruct justice. He contends he was held in contempt simply for inconveniencing the system.

◼◼◼◼ ¶ 7 To sustain a conviction for direct criminal contempt, there must be proof beyond a reasonable doubt of 1) misconduct; 2) in the presence of the court; 3) committed with the intent to obstruct the proceedings; 4) that obstructs the administration of justice. *Williams v. Williams*, 554 Pa. 465, 721 A.2d 1072 (1998). When reviewing a contempt conviction to determine the sufficiency of the evidence, we place great reliance on the discretion of the trial judge; thus, we are confined to a determination of whether the facts support the trial court's decision. *In Re: A.J. Adams*, 435 Pa.Super. 202, 645 A.2d 269 (1994).

◼◼◼◼ ¶ 8 The first element of contempt is misconduct. "Misconduct is behavior that is 'inappropriate to the role of the actor.'" *Adams, supra* at 272 (quoting *Commonwealth v. Garrison*, 478 Pa. 356, 371, 386 A.2d 971, 979 (1978)). However, "[n]either injudicious remarks nor affronts to the dignities or sensibilities of the court will, without more, support a conviction for direct criminal contempt." *Commonwealth v. Mutzabaugh*, 699 A.2d 1289, 1293 (Pa.Super.1997). Here the trial court found that Odom "engaged in misconduct when he intentionally hindered the proceedings by waiting until 3:50 p.m. to request to proceed by way of a jury trial instead of a bench trial." Trial Court Opinion, 6/9/00, at 8.

¶ 9 Instantly, after Odom requested a jury trial, it became apparent that Odom's counsel was unaware of his client's earlier jury waiver or of the obligation to present case law on the Commonwealth's motion. The court commented: "the Court is certainly feeling like this has been nothing but dilatory tactics, Mr. Edelin [appellant's

attorney], on behalf of either the defendant or the Defender Association." N.T., 7/29/99, at 6.

¶ 10 With the court's permission, Odom then explained that he felt he was not well represented. He had had 4 defenders in ten months; they had not investigated as he had asked and, at the last hearing, he had felt rushed and unclear in his thinking. He suggested that under Rule 1100 he still had time to rethink his position. The court, however, pointed out that his time was reduced by the two continuances he had already requested. The court granted the Commonwealth's motion. Odom again asked to speak asking how, if the witness were dead, he could exercise his right to face his accuser. The court explained the legal ruling to him. Odom then asked:

THE DEFENDANT: ... I wonder if you're going to grant me a jury?

THE COURT: Yes, of course. You have an absolute right to a jury trial.

THE DEFENDANT: Thank you ma'am.

N.T., 7/29/99, at 11. The court then queried Odom on the timing of the decision to request a jury trial and what effort he made to communicate this wish to counsel.

¶ 11 Odom answered respectfully, explaining that his new public defender visited him in prison and they discussed the facts of the case but not his right to a jury. Odom said he had tried to contact the Defenders by telephone and through his mother about his change of mind, but was unsuccessful in reaching counsel. The court reviewed Odom's previous contacts with the criminal justice system, which included a conviction for contempt and two guilty pleas for robbery and burglary. She then ruled:

THE COURT: Having found at 3:50 p.m. defendant making a jury demand that this is, in fact, a delay tactic on behalf of the defendant. The Court is holding Mr. Odom in contempt.

MR. EDELIN: Your Honor, he wishes to address The Court again.

THE COURT: And imposes a sentence of five months, 29 days on contempt. Yes, Mr. Odom?

THE DEFENDANT. Yes, ma'am. Can I stand up?

THE COURT: Sure.

THE DEFENDANT: When I pled on those cases, I was scared into pleading them. I didn't know no better.

THE COURT: Who scared you?

THE DEFENDANT: The PD's that came up and seen me, that was my first contact. All the PD pleas that I pled guilty on, I was scared into pleading guilty on. I didn't know no better, so now I'm more wiser and older.

THE COURT: That's fine. You absolutely have a right to have a jury decide this case. . . . .

But the fact is you can't continue the matters over and over again and allow witnesses to be brought in.

It is now almost 4 o'clock. And to ask for a jury trial at this late hour, you absolutely have a right to a jury trial, but because you caused delay in the proceedings, Mr. Odom, I'm punishing you for that.

THE DEFENDANT: Ma'am, I was down there all morning.

THE COURT: I know, because you're in custody.

THE DEFENDANT: I didn't bring myself up here 4 o'clock. They just brung [sic] me up here.

THE COURT: Okay. It's certainly something that you and/or your attorney should have communicated to the Court prior to 4 o'clock almost. . . . .

. . . .

THE DEFENDANT: Ma'am, I didn't see my lawyer until I came up here. That's why he didn't know nothing.

. . . .

THE COURT: Okay. So I believe you'll be brought back tomorrow and have the case sent out for a jury trial at

that time, and I wish you luck, Mr. Odom.

THE DEFENDANT: Thank you, ma'am.

N.T., 7/29/99, at 16–19.

¶ 12 This reiteration of events accurately reflects the environment in the courtroom throughout Odom's. hearing. Odom was unfailingly respectful and at no point raised his voice, used obscene words or gestures or demeaned the authority of the court. This is particularly evident when, after the court imposed a prison term for contempt, Odom asks to stand before addressing the court. When raising legal arguments in his own behalf, Odom may have stepped out of his appropriate role or been somewhat argumentative, but these comments without more clearly do not rise to the level of contempt. *Mutzabaugh, supra.* Moreover, Odom was singularly handicapped by ineffective counsel who failed to communicate about or prepare for his case.[1] Counsel caused the June 15, 1999 continuance but came to the July 29th hearing unprepared to argue the issue. Furthermore, when meeting with Odom prior to the new court date, counsel did not discuss his jury waiver with him because counsel was not even aware that his client had already waived a jury trial.[2]

¶ 13 Here, there is simply no evidence of the kind of conduct that results in a finding of direct contemptuous behavior. *See, e.g., Commonwealth v. Reid,* 494 Pa. 201, 431 A.2d 218 (1981) (defendant removed civilian clothing down to socks and underwear, and persisted in arguing with judge); *Commonwealth v. Shaw,* 280 Pa.Super. 575, 421 A.2d 1081 (1980) (defendant failed to return to court for afternoon session);

*Commonwealth v. Williams,* 753 A.2d 856, 2000 Pa. Super Lexis 726 (Pa.Super.2000) (defendant made obscene gesture and stated "f-k you" to court after sentencing). Thus, on this record, we do not find misconduct on the part of Odom during these proceedings. Moreover, even if we were to find misconduct, there is no evidence that Odom's behavior was intended to obstruct the administration of justice, or, in fact, did obstruct the administration of justice.[3]

¶ 14 The third element of contempt, wrongful intent on the part of the contemnor, requires evidence that the contemnor knows or should reasonably be aware that his conduct is wrongful. *Garrison, supra.* As the court properly stated, Odom had an absolute legal right to a jury trial which he requested before trial had begun. N.T., 7/29/99, at 11. Pa.R.Crim.P. 1102(B). Nevertheless, the court found that Odom:

> acted with wrongful intent because the defendant had already caused the case to be continued from June 15 to July 29, claiming to want to submit case law....
> ... no case law was submitted and defense counsel never even advised the Court, or the Commonwealth, concerning its failure to do so. Coupled with the extreme lateness of his announcement that he wished to be tried by a jury, this Court had sufficient evidence regarding defendant's intent to delay the proceedings.

Trial Court Opinion, 6/9/2000, at 8–9.

¶ 15 On this record, it is undisputed that on June 15th Odom's counsel, caught by surprise when the Commonwealth moved to admit preliminary hearing testimony of

---

1. Odom is again represented on appeal by the Defenders who acknowledge both the failure of Odom's counsel to provide caselaw and the failure of his third and fourth counsel to coordinate their duties. Counsel argues that these failings should not be held against Odom. Appellant's Brief at 16.

2. Counsel acknowledged that he had not reviewed the quarter session file and was in the process of filling out a jury waiver form that

day. N.T., 7/29/99, at 3. Counsel had obviously also failed to discuss any relevant legal rules with Odom since the trial judge with considerable patience explained two legal questions legitimately raised by Odom during the proceedings.

3. The second element of contempt requiring that the behavior take place in the presence of the court is obviously met in this case.

an unavailable witness, asked for a continuance and then failed to prepare to argue the motion. The court's annoyance that counsel had caused an unnecessary delay is understandable, but neither the behavior causing the delay nor knowledge that it was wrongful can be imputed to Odom. Odom himself was clearly unable to communicate with his attorney until he was brought into the courtroom at 3:50 p.m. Furthermore, given Odom's experience with counsel which he testified made him feel that he was poorly represented, he reasonably may have concluded that he should change his strategy in court. Thus, the facts on this record do not support beyond a reasonable doubt that Odom had the requisite intent to obstruct the administration of justice when he asked for a jury trial.

¶ 16 With regard to the fourth element of contempt, it is well-established that for conduct to constitute an obstruction of the administration of justice, it must significantly disrupt the proceedings. *Commonwealth v. Rubright*, 489 Pa. 356, 414 A.2d 106 (1980). Contempt requires "actual, imminent prejudice to a fair proceeding or prejudice to the preservation of the court's orderly procedure and authority." *Commonwealth v. Falana*, 548 Pa. 156, 161, 696 A.2d 126, 128 (1997). The trial court stated that:

> [A] significant disruption in the proceedings occurred, since the matter was continued until August 2, 1999.
>
> . . . .
>
> [i]t was not until after this Court had reviewed the defendant's file and the defendant was given an opportunity to address this Court, that this Court concluded that the defendant was abusing the system to prolong the adjudication of his case.... Thus, this Court did not sanction the defendant for exercising a

constitutional right to a jury trial, but instead, found in its reasonable discretion that it was appropriate to sanction the defendant for intentionally delaying the proceedings.

Trial Court Opinion, 6/9/00, at 9,10.

¶ 17 As the trial court's statement implicitly reveals, there is no evidence on this record that a significant disruption occurred in the brief proceedings in her courtroom on July 29, 1999. Nor after our thorough review of the record, do we find facts to support a conclusion that Odom's conduct prejudiced either the fairness or the orderliness of the proceeding or directly challenged the court's authority.

¶ 18 Having found that Odom's request for a jury trial did not rise to the level of contemptuous misconduct and that the evidence was insufficient to prove beyond a reasonable doubt that he intended to obstruct the administration of justice, we reverse the trial court's order of July 29, 1999 finding Odom in direct contempt of court. Accordingly, the judgment of sentence is reversed.[4]

¶ 19 STEVENS, J., files a Dissenting Opinion.

STEVENS, J., dissenting:

¶ 1 I respectfully dissent from the Majority's decision to reverse the trial court's order of July 29, 1999, which found Appellant in direct contempt of court.

¶ 2 A court's power to maintain courtroom authority is well-settled. *Behr v. Behr*, 548 Pa. 144, 695 A.2d 776 (1997). In *Commonwealth v. Africa*, 466 Pa. 603, 353 A.2d 855 (1976), the Supreme Court stated that "[t]he court must be able to control those appearing before it, and must be able to use its power summarily to avoid interference with the principal matter before the court." *Id.* 466 Pa. at 623, 353

---

4. Odom was found guilty by a jury of burglary and related offenses and, on September 21, 1999, was sentenced by the Honorable Anthony DeFino to one and one-half to three years incarceration followed by two years probation. In light of our disposition of this appeal, any time Odom has spent in custody for contempt should be credited to the sentence imposed by Judge DeFino.

A.2d at 865. If the courts continually carve away at this power, the balance, dignity, and integrity of the courtroom may be in jeopardy. *Commonwealth v. Martorano*, 387 Pa.Super. 79, 563 A.2d 1193, 1200 (1989). Thus, "[w]hen reviewing the propriety of a contempt conviction, we place great reliance upon the discretion of the trial judge, ... and are confined to a determination of whether the facts support the trial court's decision." *In Re: A.J. Adams*, 435 Pa.Super. 202, 645 A.2d 269, 271–272 (1994).

¶ 3 In the present case, a review of the record indicates that on June 15, 1999, the date scheduled for trial, the trial court conducted a waiver colloquy, and determined that Appellant knowingly, intelligently, and voluntarily waived his right to a jury trial. *See* N.T. 6/15/99 at 11–17 and Opinion filed 6/9/00, Att. "A". Thereafter, Appellant, through his attorney, objected to the admission of certain preliminary hearing testimony and requested a continuance in order to seek case law on the matter. N.T. 6/15/99 at 30–36. The court then inquired of Reverend Georgia Smith, the complaining witness who was present in the courtroom, if she could return on a later date. *Id.* at 36. Reverend Smith replied that she could return, but **not** in the month of August. *Id.* The case was rescheduled for the week of July 26, 1999.

¶ 4 When Appellant's case was called to the courtroom at 3:50 p .m. on July 29, 1999, he indicated to the court that he had done "some homework on himself." N.T. 7/29/99 at 7. Appellant proceeded to comment on Pa.R.Crim.P. 1100, and its effect on his case if he was not brought to trial within the given number of days. *Id.* at 8. He then stated, "I still have two months that I can still play with that, my due rights been violated." *Id.* at 8–9. Following a discussion with the court, Appellant requested a jury trial. *Id.* at 11–12. Thereafter, regarding Appellant's late request for a jury trial, the court asked him

when he previously had met with his attorney. *Id.* at 12. After Appellant responded that he had met with him on July 20th, the court inquired if, at that time, he told his attorney that he wanted a jury trial. *Id.* Appellant stated that he "was going to bring it to his [attorney's] attention, but it slipped [his] mind at the time." *Id.* at 13. Appellant's trial was subsequently delayed until August 2, 1999.

¶ 5 Based on the foregoing facts adduced from the record, I find that Appellant's dilatory tactics were inappropriate, *Commonwealth v. Falana*, 548 Pa. 156, 696 A.2d 126 (1997). Furthermore, the Supreme Court has stated that "[a] contemner acts with wrongful intent if he knows or should reasonably be aware that his conduct is wrongful." *Id.* 548 Pa. at 162, 696 A.2d at 129, *citing United States v. Seale*, 461 F.2d 345, 368 (7th Cir.1972) (citation omitted). This Court may infer Appellant's intent from his conduct and the surrounding circumstances. *See Falana, supra.* Because Appellant should have reasonably been aware that his dilatory tactics were wrongful, I believe that Appellant acted with the requisite intent. Finally, contrary to the Majority's conclusion, Appellant's conduct disrupted the proceedings in that the trial was continued to a later date.[5] *Martorano*, 563 A.2d at 1197 (stating that "[c]onduct which interrupts and delays the proceedings may constitute conduct which obstructs the administration of justice") (citation omitted).

¶ 6 The Majority fails to place reliance on the discretion of the trial judge. I find that the facts support the trial court's decision, and, therefore, would affirm the trial court's order of July 29, 1999 finding Appellant in direct contempt of court.

**5.** In its brief, the Commonwealth notes that when Appellant's trial commenced on August 2, 1999, he attempted to withdraw his request for a jury trial. Commonwealth's Brief at 7.