J-A08041-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| N.E.G. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| J.Z.M. | : | |
| | : | |
| | : | No. 1613 EDA 2024 |
| APPEAL OF: RICHARD DUCOTE | : | |

Appeal from the Order Entered May 9, 2024
In the Court of Common Pleas of Montgomery County
Civil Division at No(s): 2017-28078

BEFORE: LAZARUS, P.J., McLAUGHLIN, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:                    **FILED JANUARY 5, 2026**

Richard Ducote ("Attorney Ducote") appeals *pro se* from the order holding him in contempt during a child custody trial and detaining him in a courthouse jail cell ("the bullpen") for over one hour. Attorney Ducote claims that the trial court should have granted earlier motions for the court to recuse and that his conduct did not rise to the level of direct criminal contempt. For the reasons that follow, we decline to consider interlocutory issues that are not within the proper scope of this appeal, such as the prior orders denying recusal, and we conclude there was sufficient evidence supporting the trial court's decision to find Attorney Ducote in direct criminal contempt.

The present appeal arises out of contentious and ongoing custody proceedings between N.E.G. ("Mother"), whom Attorney Ducote currently

represents,[1] and J.Z.M. ("Father"). The relevant proceedings involved their three children, two daughters, I.M. and J.M.M., and one son, J.M. (collectively, "Children").[2]

This Court is familiar with Mother's and Father's disputes over the course of the custody, protection from abuse, and contempt proceedings. For the purpose of this appeal, it suffices to note that over the course of those proceedings, Mother alleged that she obtained photographs or images of Children ("the photographs"), which Father took and which evidenced his sexual exploitation or abuse of Children. Mother showed the photographs, or similar images, to the Montgomery County Office of Children and Youth ("OCY"), and other child welfare and law enforcement agencies. To date, no office or agency has deemed Mother's allegations of abuse founded or charged Father with any crimes.

In August 2023, the trial court precluded Mother from using the photographs during the custody proceedings after Mother did not comply with the trial court's orders for an *in camera* review of the photographs. **See** Order, Seq. No. 416, 6/26/23, unnumbered at 1-2 (granting Mother's motion for an *in camera* review subject to conditions); Order, Seq. No. 544, 8/4/23, unnumbered at 1-2 (indicating that Mother did not comply with the order at

_____

[1] Attorney Ducote entered his appearance in the custody proceedings in May 2023. Mother was also previously represented by numerous prior counsel, including Joesph Rizzo ("prior counsel").

[2] I.M.M. and J.M.M. have turned eighteen years old.

Seq. No. 416); Order, Seq. No. 552, 8/14/23, unnumbered at 3 (precluding Mother from submitting the photographs in the custody proceeding) ("preclusion order").[3]  However, before the court issued its preclusion order, at least two of the Children's court-appointed guardians *ad litem* ("GALs") received the photographs and referenced them in their reports and recommendations regarding custody.[4]

Additionally, Mother had filed numerous motions for the trial court to recuse based on assertions that the trial court engaged in *ex parte* communications[5] and showed ill-will and prejudice against Mother and

---

[3] Although several jurists had presided over the prior proceedings in this matter, the Honorable Kelly Wall was the presiding judge at the times relevant to this appeal.

[4] Maria Testa ("GAL Testa"), the GAL for one of the parties' daughters, J.M.M., and Elizabeth Early ("GAL Early"), the GAL for the parties' son, J.M., both received and referenced the photographs in their reports and recommendations.  Both are attorneys and their reports and recommendations were largely adverse to Mother's position in the custody proceedings.

[5] By way of additional background, several of Mother's previous recusal motions alleged communications between the trial court and police detectives, Detective John Mick ("Detective Mick") and/or Detective John Hunsicker ("Detective Hunsicker"), who were either familiar with, or assigned to, complaints brought by Mother against Father.  In late November 2023, the trial court issued a memorandum disclosing to the parties that the trial court had received information and documents from Detective Mick that same month.  However, GAL Testa's report indicated Detective Hunsicker had communicated with the trial court.  The trial court later indicated that it confused Detective Hunsicker with Detective Mick when it issued the November 2023 memorandum disclosing the communications between the court and the detective.

Attorney Ducote. The trial court denied all of those prior motions to recuse. Between September 2023 and March 2024, the trial court also held numerous hearings on Father's motions to hold Mother, her prior counsel, and Attorney Ducote in contempt, which included consideration of the serial filing of recusal motions and violations of the trial court's pre-trial orders regarding the photographs.[6]

Beginning on May 6, 2024, the trial court attempted to conduct a multi-day custody trial. At the start of trial, the court: (1) warned counsel to maintain professional decorum and to provide the court with due respect; (2) reaffirmed the preclusion order concerning the photographs; (3) warned that no attorney or witness should mention the photographs; and (4) warned that the court would tally each violation of its guidelines as a contempt subject to a $500 penalty. **See** N.T., 5/6/24, at 5-7, 20. The trial court specifically warned that if counsel persisted in mentioning the photographs, it reserved the right to sanction counsel. **See id**. at 21. The trial court provided Attorney Ducote an opportunity to present general objections and motions at the beginning of trial and emphasized Attorney Ducote should not re-raise those objections or motions throughout the hearing. **See id**. at 7. Attorney Ducote

---

[6] The trial court issued several orders finding Mother, Attorney Ducote, and Mother's prior counsel in contempt in November 2023, December 2023, and January 2024. This Court previously considered the appeals from those orders in **N.E.G. v. J.Z.M**, 341 A.3d 72, 2025 WL 1879568 (Pa. Super. July 8, 2025) (non-precedential *per curiam* mem. decision). The trial court again found Mother, Attorney Ducote, and Mother's prior counsel in contempt in June 2024. We address Mother's and Attorney Ducote's appeals from the June 2024 order at J-A08040-25 and J-A08042-25.

- 4 -

asserted the trial court should either strike the reports of the GALs and prohibit the GALs from testifying or permit discussion of the photographs on the theory that the door had been opened. *See id*. at 14, 21-23.[7] The trial court did not expressly rule on those objections and proffer before starting the hearing, but the court maintained there should be no mention of the photographs.

Over the first day of the hearings, Attorney Ducote re-raised similar objections and proffers, but the trial court determined that the door had not been opened to the photographs and sustained objections to his attempt to bring up the photographs. *See id*. at 79-80, 82-83, 229-31. On the second day of the hearings, May 7, 2024, Attorney Ducote persisted and referenced his objections and proffer of the photographs at least four times: once before the Father called GAL Early—the GAL for the parties' son, J.M.—to testify, at which point the trial court stated, "We are not going to talk about the photographs[;]" and then three more times during his cross-examination of GAL Early. *See* N.T., 5/7/24, at 112-13, 182-84, 213-14, 219-20.

On third day of the hearings, May 8, 2024, Attorney Ducote again attempted to broach the matter of the photographs three times, once during

_____

[7] Attorney Ducote did not move for the trial court's recusal based on the court's communication with Detective Hunsicker at the beginning of the hearing even though GAL Testa's report and recommendations suggested the detective had communicated with the court. However, Attorney Ducote attempted to explore communications between the trial court and Detective Hunsicker during the detective's testimony on the first day of the hearing and moved for the trial court's recusal on the third day of hearings after he had GAL Testa read that portion of her report. *See* N.T., 5/8/24, at 83, 88. The trial court denied the oral motion for recusal. *See id*. at 96.

the direct examination of GAL Testa, the GAL for one of the parties' daughters, J.M.M, and twice while cross-examining GAL Testa. *See* N.T., 5/8/24, at 40-42, 82, 118-21. The trial court warned Attorney Ducote that he would be found in contempt and sent to the bullpen if he continued to reference the photographs. *See id*. at 121.[8] On Attorney Ducote's fourth reference to the photographs that day, and while he was still cross-examining GAL Testa, the court ordered sheriffs to escort him to the bullpen over a recess. *See* N.T., 5/8/24, at 165-66. Specifically, Attorney Ducote's reference, and the court's finding of contempt, occurred while Attorney Ducote was cross-examining GAL Testa on her report and recommendation that J.M.M. was too heavily involved in the custody matter and should not have had information concerning the disputes between Mother and Father:

> [Attorney Ducote]. Okay. Well, let's go to the next one. What's the next one that [J.M.M.] knows that [J.M.M.] shouldn't know?
>
> [GAL Testa]. You're, I think, mischaracterizing --
>
> [Attorney Ducote]. I'm asking you a question.
>
> [GAL Testa]. Can I answer?

---

[8] The trial court had indicated it was marking Attorney Ducote in contempt, subject to the $500 sanction, for referencing the photographs at least two times during his cross-examination of GAL Testa. *See* N.T., 5/8/24, at 82, 119. The trial court had also warned Attorney Ducote that he would be sent to the bullpen if he continued to disrespect GAL Testa during his cross-examination. *See* N.T., 5/8/24, at 148 (warning Attorney Ducote after he referred to GAL Testa as "throwing [J.M.M.] under the bus").

[Attorney Ducote].  Yes.  What's the next one?  You said Turning Points[9] was one [J.M.M.] shouldn't know.

What else should she not know in your opinion?

[GAL Testa].  There are some things I can't actually discuss that I'm precluded from discussing.  So I can't answer correctly for you.

[Attorney Ducote].  Okay.  So you're basing that on some of the things are precluded?

[GAL Testa].  Yes.

[Attorney Ducote]: Okay.  Well, Your Honor, this gives me the opportunity to go into it.

[Father's Counsel]: Oh, wow.

THE COURT: I'm done.  I'm done.

Sheriffs -- where's my order about this?

[Attorney Ducote]: Your Honor --

THE COURT: Sir, I'm finished.  You can go down there until one o'clock.  I've had it.  I've had it.

[Attorney Ducote]: Okay.  Would you call the media, please?  This is ridiculous.

[Father's Counsel]: Call the media?

[Attorney Ducote]: Absolutely.

(Witness excused.)

---

(At this time, [Attorney] Ducote was escorted to the bullpen.)

---

_____

[9] "Turning Points" is a reunification program Father wanted the parties' son, J.M., to attend.  Mother objected to J.M. attending Turning Points.

> (At 12:29 p.m., a recess was taken until 1:43 p.m. of the same day.)

N.T., 5/8/24, at 165-66.

After the hour-and-fourteen-minute recess, the trial court reconvened hearing, and discovered that Mother had recorded, but deleted, video of the sheriffs handcuffing Attorney Ducote. The trial court ended the trial. Attorney Ducote timely appealed the court's order to imprison him for contempt,[10] and both he and the trial court complied with Pa.R.A.P. 1925.

Attorney Ducote raises the following issues for our review:

1) Did [the trial court] legally err and abuse [its] discretion in denying all motions to recuse and disqualify [itself] filed by [Mother] and her counsel prior to May 8, 2024?

2) Did [the trial court] legally err and abuse [its] discretion in denying the oral motions to recuse and disqualify her urged by [Attorney Ducote] at the May 8, 2024, hearing after, *inter alia*, it was established that [the trial court] had in early November, 2023, engaged in yet another unethical *ex parte* communication with Det[ective] Hunsicker, in stark violation of [Rule 2.9 of the Code of Judicial Conduct]?

3) Did [the trial court] legally err and abuse her discretion during the recess in the May 8, 2024, hearing, when [the court] purportedly went to . . . chambers to retrieve a non-existent memo which she falsely claimed she had sent to counsel disclosing

_____

[10] On May 9, 2024, the trial court issued an interim order that referred to Attorney Ducote's detention; however, a written order memorializing the trial court's finding of contempt and directing the detention of Attorney Ducote was not entered onto the docket until May 29, 2024. Attorney Ducote timely filed this appeal on June 6, 2024, either from the trial court's verbal order on May 8, 2024, finding Attorney Ducote in contempt and directing he be detained in the bullpen, or as memorialized by the written order entered on the docket.

The trial court, in September 2024, recused itself from the custody proceedings.

[Detective] Hunsicker[′s] *ex parte* communication, by during that recess preparing and *sua sponte* pre-fabricating and signing the May 8, 2024, [o]rder supposedly finding [Attorney Ducote] in contempt of court and ordering his incarceration, but without informing counsel of that order or filing the [o]rder in the record, when at no time had counsel engaged in any conduct constituting direct criminal contempt of court . . .?

4) Did [the trial court] legally err and abuse [its] discretion by, later during the May 8, 2024, hearing, suddenly pulling out the already signed May 8, 2024, [o]rder . . . finding [Attorney Ducote] in contempt of court and, based on the unlawful pre-fabricated [o]rder, ordering his handcuffing and incarceration, when at no time had [Attorney Ducote] engaged in any conduct constituting direct criminal contempt of court . . .?

5) Did [the trial court] legally err and abuse [its] discretion by entering the May 9, 2024, [i]nterim [o]rder . . . finding [Attorney Ducote] in contempt of court and, based on the unlawful pre-fabricated [o]rder, ordering his handcuffing and incarceration, when at no time had counsel engaged in any conduct constituting direct criminal contempt of court . . .?

6) Did [the trial court] legally err and abuse [its] discretion by willfully concealing, refusing to disclose or file into the record, or provide a copy to counsel of the already signed and unlawfully pre-fabricated May 8, 2024, [o]rder . . . until May 29, 2024, after [Attorney Ducote] again demanded a copy on May 17, 2024 . . ., where [the trial court's] sole purpose in concealing and refusing to file the [o]rder into the record was to wrongfully cover-up this smoking gun of [its] blatant misconduct?

7) Did [the trial court] legally err and abuse [its] discretion by issuing the May 8, 2024, [o]rder . . . and the May 9, 2024, Interim Order [Seq. 1001] adjudicating [Attorney Ducote] in direct criminal contempt of court, and ordering his incarceration, where the trial court's actions were solely based on [the court's] abject disdain for counsel and unethical retaliation against him for uncovering her serial unethical violations of the Code of Judicial Conduct and his stated intent to file complaints with the Judicial Conduct Board, where [Attorney Ducote] engaged in no conduct constituting direct criminal contempt of court . . .?

Attorney Ducote's Am. Br. at 6-9.

Attorney Ducote's arguments do not correspond to his statement of questions; instead, his arguments outline two claims: (1) the trial court abused its discretion prior to the custody trial when it denied numerous motions to recuse; and (2) the record did not support the court's finding of direct criminal contempt. *See id*. at 12, 16; ***but see*** Pa.R.A.P. 2119(a) (requiring that "[t]he argument shall be divided into as many parts as there are questions to be argued"). This defect does not impede meaningful appellate review, and we will address Attorney Ducote's claims as argued in his brief.[11]

With respect to Attorney Ducote's first claim, concerning the trial court's denial of Mother's prior motions to recuse, we conclude that his challenge is not properly before this Court. As this Court explained in a related appeal:

> Generally, an order ruling on a motion for recusal is an interlocutory order. This Court has indicated that an appeal from a denial of a pre-trial motion to recuse . . . is not an interlocutory or collateral order that is immediately appealable. Only when the

---

[11] We remind Attorney Ducote that the statement of the questions involved on appeal must state concisely the issues to be resolved, expressed in the terms and circumstances of the case but without unnecessary detail." Pa.R.A.P. 2116(a). Furthermore, to the extent Attorney Ducote's arguments do not align with his statement of questions, we will not address the issues suggested in the statement of questions. *See* Pa.R.A.P. 2119(a); ***Commonwealth v. Rodgers***, 605 A.2d 1228, 1239 (Pa. Super. 1992) (noting that "[w]e must deem an issue abandoned where it has been identified on appeal but not properly developed in the appellant's brief") (internal citation omitted). We note however, that having reviewed the record, we discern no basis for Attorney Ducote's speculation that the trial court had a pre-prepared written order to hold him in contempt or that the trial court found him in contempt in retaliation for his threatening the court to report *ex parte* conversations to the Judicial Conduct Board.

underlying action has been decided, does the court's decision become a final appealable order.

[T]he underlying custody matter is ongoing, and no final order has been entered concerning custody. Thus, any appeal challenging the denial of recusal is interlocutory at this juncture. Furthermore, neither Attorney Ducote nor Mother have set forth any other basis to establish this Court's jurisdiction (*i.e.*, such as pursuant to the collateral order doctrine) to invoke our jurisdiction over this issue. Therefore, we quash the portion of [those] appeals that purport to appeal from the denial of the[] recusal requests.

**N.E.G.**, 2025 WL 1879568 at *11 (internal citations, quotation marks, brackets, and footnote omitted).

The reasoning in our prior decision is both sound and persuasive. The issue of the trial court's denials of prior motions to recuse are not properly before this Court until the trial court renders a final decision on the ongoing custody dispute. Accordingly, we will not consider Attorney Ducote's first claim in this appeal.

Next, Attorney Ducote claims the record did not support the trial court's finding of him in direct criminal contempt.

The following principles govern our review of the trial court's contempt order:

A trial court's finding of contempt will not be disturbed absent an abuse of discretion. . . . Direct criminal contempt is codified in 42 Pa.C.S.[A.] § 4132, which provides contempt power to the trial court and authorizes the court to penalize:

\* \* \* \*

(3) The misbehavior of any person in the presence of the court, thereby obstructing the administration of justice.

42 Pa.C.S.[A.] § 4132.

- 11 -

*Commonwealth v. Meehan*, 235 A.3d 1284, 1288 (Pa. Super. 2020) (internal citations, quotation marks, and brackets omitted). To sustain a conviction for direct criminal contempt under section 4132(3),

> there must be proof beyond a reasonable doubt of 1) misconduct; 2) in the presence of the court; 3) committed with the intent to obstruct the proceedings; 4) that obstructs the administration of justice. When reviewing a contempt conviction to determine the sufficiency of the evidence, we place great reliance on the discretion of the trial judge; thus, we are confined to a determination of whether the facts support the trial court's decision.

*Commonwealth v. Odom*, 764 A.2d 53, 54 (Pa. Super. 2000) (internal citations omitted).

Attorney Ducote does not dispute he intended to question GAL Testa about the photographs when he was found in contempt, and his argument begins with an extensive discussion of why he believes the photographs were relevant and the trial court's pre-trial orders, including the preclusion order, were improper. *See* Attorney Ducote's Am. Br. at 22-24. He asserts the trial court "preposterously" threatened to hold him in contempt for even mentioning the photographs at the custody trial when the door had been opened to the evidence. *Id*. at 25. Attorney Ducote contends that the specific event precipitating the contempt finding was "innocuous." *Id*. at 26. Citing, in relevant part, *Kinter v. Kinter*, 501 A.2d 281 (Pa. Super. 1985), and *Meehan*, Attorney Ducote argues that his conduct was not wrongful. *See id*. at 18-22. Attorney Ducote also quotes *Matter of Creamer*, 529 A.2d 27 (Pa. Super. 1987), and *Commonwealth v. Collier*, 510 A.2d 796 (Pa. Super.

1986), to support his position that his conduct did not disrupt the proceedings. *See id*. at 28-30. Any disruption in the proceedings, Attorney Ducote continues, resulted from the trial court's "hostile overreaction grounded in [its] bias against [Mother and Attorney Ducote]." *Id*. at 30

The trial court, after detailing Attorney Ducote's conduct throughout the custody proceedings, described the specific factual bases for finding Attorney Ducote in contempt as follows:

> Over the course of the first three (3) days of the custody hearing, Attorney . . . Ducote had made **MULTIPLE** attempts to elicit testimony about the precluded photographs from various witnesses, including the court-appointed GALs. In response, opposing counsel made numerous and continual objections to [Attorney Ducote's] blatant disregard of this court's orders and preliminary instructions. Such objections were sustained by the undersigned. The undersigned also repeatedly reprimanded [Attorney Ducote] for his disregard for this court's orders, directives and rulings, and he was warned on **NUMEROUS** occasions that his continued disregard of this court's orders, directives and rulings would result in a finding of willful contempt and sanctions, including an hour-long detention. Yet, [Attorney Ducote] made it clear that he had no intention of complying with this court's authority and continued to willfully and intentionally disrupt the orderly process of the proceedings creating chaos and disorder in the courtroom.
>
> On the third day of the hearing, . . . [Attorney Ducote] ma[de] his first attempt of the day to raise the issue of the photographs wherein he was told by the undersigned to "Stop[,]" and once again warned not to discuss the photographs. . . . [Attorney Ducote] again tried to raise the issue of the photographs to which the undersigned responded: "I've warned you. I'm going to hold you in contempt, yet again. Those — don't look at me that way. The photos are not going to be questioned or mentioned. Sir, move on. Put it on the record for appeal." . . . [Attorney Ducote] again attempted to raise the issue of the photographs while cross-examining one of the GALs[, GAL Testa,] (to whom he was extremely disrespectful during his examination) causing the

undersigned to repeatedly state: "No photos. . . . No photos . . . No photos . . . I have mentioned over and over no photos. I'm tired of this. This has been going on for months. No photos . . . No photos. Move on. No photos. What don't you understand, sir? No photos. I don't know how many times I — probably hundreds of times in all these records — no photos. Don't even look at me. Continue with — you can skip over any reference to the photos. . . . I'm going to tell you right now. Here's the deal. And I was very strict about this. **The next time you mention those photos, I am putting you in the bullpen[], and you'll sit there for an hour and you'll think about what I've said over and over and over. No photographs. Sir, I'm done . . . I have given you leeway and you keep on talking about it and talking about it. No photos . . . No. No argument. . . . No arguments.**" (emphasis added).

Thereafter, while still cross-examining the GAL, [Attorney Ducote] tried to bootstrap the photographs into the record arguing that due to a response by the GAL to his questioning, the door was opened giving him the right to bring up the precluded photographs. At this point, it was more than abundantly clear that [Attorney Ducote] was intentionally making a mockery of the court proceedings and wholly disrespecting the authority of this court.

Trial Ct. Op., 8/19/24, at 6-8 (footnotes and some capitalization omitted).

The court concluded "Attorney Ducote's behavior and conduct detailed above constitutes misconduct, disobedience of the lawful process of the [c]ourt and misbehavior that obstructed the administration of justice." *Id*. at 13.

Following our review, we discern no reversible error or abuse of discretion in the trial court's finding that Attorney Ducote was in direct criminal contempt. At the outset, we note that the trial court did not identify the precise subsection of section 4132 under which it proceeded. However, the trial court's conclusion that Attorney Ducote engaged in misbehavior that

obstructed the administration of justice implicates subsection (3). *See id*.; 42 Pa.C.S.A. § 4132(3).[12]

There is no dispute that the incident giving rise to the trial court's finding of direct criminal contempt occurred in the presence of the court, during the custody trial, and Attorney Ducote's arguments relate to the first, third, and fourth elements of section 4132(3), namely, whether his actions constituted misconduct, committed with the intent to obstruct the proceedings, and which obstructed the administration of justice. *See* 42 Pa.C.S.A. § 4132(3); Attorney Ducote's Am. Br. at 18-22, 28-30.

With respect to "misconduct," the behavior must be inappropriate to the role of the actor. *See Williams v. Williams*, 721 A.2d 1072, 1074 (Pa. 1998). The actor's wrongful intent may be established when the actor "knows or should reasonably be aware that his conduct is wrongful." *In re Adams*, 645 A.2d 269, 272 (Pa. Super. 1994). Significantly,

> [t]o obstruct justice, conduct must significantly disrupt proceedings. . . . [C]ontempt requires actual, imminent prejudice to a fair proceeding or prejudice to the preservation of the court's orderly procedure and authority. Remarks that are injudicious, or even disrespectful, will not, without more, justify a summary conviction for contempt of court.

*Williams*, 721 A.2d at 1074.

_____

[12] To the extent the trial court referred to language in subsections (1) or (2) relating to the conduct of officers of the court, our courts have held that the phrase "officer of the court," refers to officers performing ministerial tasks, not attorneys appearing before a court. *See Matter of Campolongo*, 435 A.2d 581, 583 (Pa. 1981); *Meehan*, 235 A.3d at 1289. Therefore, our review, as to Attorney Ducote's arguments, focuses on subsection (3).

When applied to an attorney appearing before a court, consideration of these elements must balance competing principles. On the one hand, "the ability to raise a criminal contempt citation empowers a trial judge with the ability to maintain command over his or her courtroom[, and] the criminal contempt sanction gives credence to a judge's status as commander in chief over his or her courtroom." *Commonwealth v. Umoh*, 311 A.3d 24, 30 (Pa. Super. 2024). On the other hand, "[i]t is also essential to a fair administration of justice that lawyers be able to make honest good-faith efforts to present their client's cases" without "fear of judicial disfavor or public unpopularity." *Commonwealth v. Garrison*, 386 A.2d 971, 979 (Pa. 1978) (internal citations and quotation marks omitted). Accordingly, "trial courts . . . must be on guard against confusing offenses to their sensibilities with obstruction to the administration of justice." *Commonwealth v. Restifo*, 488 A.2d 633, 636 (Pa. Super. 1985).

Here, the trial court issued the pre-trial preclusion order regarding the photographs, which Attorney Ducote obviously disagreed with, but which applied to the conduct of the custody trial. Although Attorney Ducote appears to assert his conduct was justified by his belief the preclusion order was improper, this did not excuse him from comporting himself with appropriate decorum expected of the profession and with due regard for the court. His repeated attempts to circumvent the pre-trial preclusion order in defiance of the trial court's repeated rulings, warnings, and indications of monetary sanctions over three days of the custody hearings are sufficient to establish

he was in direct criminal contempt. *See Adams*, 645 A.2d at 272 (sustaining a finding of misconduct where an attorney's theatrics distracted from the issues at trial); *see also, generally, Ewing v. Oliver Realty, Inc.*, 451 A.2d 751, 755 (Pa. Super. 1982) (noting that "an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings"); *In re Thirty-Fifth Statewide Investigating Grand Jury*, 112 A.3d 624, 631 (Pa. 2015) (noting that "[i]f a party can make himself a judge of the validity of orders which have been issued, and by his own act of disobedience set them aside, then are the courts impotent, and what the Constitution now fittingly calls the judicial power of the United States would be a mere mockery") (internal citation and quotation marks omitted).[13]

Attorney Ducote's pattern of misconduct distinguishes the relevant cases upon which he relies and highlights the extreme facts of this case. In *Kinter*, this Court concluded that a *single* oral motion for recusal from a custody matter did not rise to the level of "contumacious behavior contemplated by 42 Pa.C.S.A. § 4132(3) and relevant case authority[,]" even

---

[13] Similar to the issue of recusal, the trial court's evidentiary rulings are generally interlocutory and cannot be appealed until the trial court enters a final judgment. *Cf*. *Commonwealth v. Slaton*, 556 A.2d 1343, 1352 (Pa. Super. 1989) (*en banc*) (stating that "[t]he mere fact that a non-appealable order rides on the coattails of an appealable order does not confer jurisdiction on this court to review the non-appealable order"). Moreover, because parties are expected to abide by the orders of a court until they are reversed in orderly and proper proceedings, we decline to opine on the trial court's orders and rulings regarding the photographs in this appeal.

if certain portions of the motion had been "ill-advised." **See Kinter**, 501 A.2d at 282-83. Here, as detailed above, Attorney Ducote engaged in a persistent course of conduct challenging the pre-trial preclusion order and several similar rulings over the course of several days of hearings. This provides sufficient evidence of his wrongful conduct. **See Adams**, 645 A.2d at 272 (noting that an experienced attorney "should reasonably have been aware that his conduct was wrongful because it resulted in objections from the prosecutor and serious warnings from the court").[14]

In **Collier**, an attorney, in relevant part, tried to elicit testimony during a suppression hearing to which opposing counsel objected twice. **See Collier**, 510 A.2d at 797. The trial court there sustained the objections and then refused to hear any arguments in response. **See id**. at 797-98.[15] When the attorney persisted in attempting to argue his point, the trial court then suggested the attorney was in contempt and directed, "No more arguing," at which point the attorney asked the court to put on the record how he was in contempt. **Id**. at 798. The court then held the attorney in contempt. **See id**. In that case, the entirety of the questioning and exchange between the

---

[14] As an aside, Attorney Ducote tabulates no less than eleven written motions to recuse in the brief in this appeal. **See** Attorney Ducote's Br. at 13. This does not include the oral requests for recusal throughout the contempt hearings and the three days of the custody trial.

[15] **Collier** also involved the reversal of a second finding of contempt where the attorney requested that his client be allowed to go to a bathroom, rather than using a "can" in the courtroom, because the jury had assembled in the hallway. **See id**. at 550-552. That scenario is far different than the case *sub judice*.

court and the attorney spanned three pages of a transcript for a single hearing. *See id*. at 797-98. Under those circumstances, this Court concluded that simply sustaining the objections was a sufficient remedy, and it did not follow that the attorney's "continued assertion, with legal argument, that he should be allowed to continue his line of inquiry, was intended to obstruct or did obstruct judicial proceedings." *Id*. at 799.

In *Creamer*, an attorney twice referenced an evidentiary ruling of the court during closing arguments, arguing to the jury that he tried to get a police report into evidence and that there was more evidence that the trial court would not permit. *Creamer*, 529 A.2d at 28. Under those circumstances, this Court similarly concluded the attorney had not acted with the intent to obstruct the proceedings or obstructed the administration of justice. *See id*. at 29.

Lastly, in *Meehan*, the attorney's misconduct (attempting to interrupt the court when denying his client's motion to dismiss and making remarks, laughing, and expressing disagreement with the trial court's ruling, as the court began a bail hearing for another defendant), did not cause a break or significant interruption in either proceedings. *See Meehan*, 235 A.3d at 1286, 1290. The court there had addressed the other defendant's issue, then called a recess at which point it called the attorney back to the courtroom during which a verbal exchange occurred and the court found the attorney in contempt. *See Meehan*, 235 A.3d at 1286, 1290.

By contrast to the conduct at issue in **Collier**, **Creamer**, and **Meehan**, Attorney Ducote's repeated the same argument that the door had been opened to the photographs—at least six times over the first two days of the hearing, and three times during the examination of GAL Testa on the third day—and the trial court had consistently overruled Attorney Ducote, imposed monetary sanctions, and warned him of further sanction. This provides a sufficient basis for concluding that Attorney Ducote, when he persisted in again seeking to open the door to the photographs, exceeded the bounds of zealous advocacy, was not acting in good faith to preserve the record, and acted with the intent to disrupt the custody trial and prejudice the trial court's orderly procedure and authority. Attorney Ducote's conduct, when taken as a whole, evidenced the type of disrespect necessary for the trial court to vindicate its authority as commander-in-chief at trial. Indeed, as the trial court noted, "[i]f such contemptuous conduct [wa]s permitted to go unchecked, it unduly harm[ed] the litigants (particularly Father in this case), allow[ed] for the abuse of other counsel and professional experts involved in the case and jeopardize[d] the authority and power of the [c]ourt and the judicial process." Trial Ct. Op., 8/19/24, at 14.[16] Under the circumstances of this case, we discern no abuse of discretion in the trial court's conclusion that

_____

[16] As to Attorney Ducote's comments while cross-examining GAL Testa, **see also** N.T., 5/8/24, at 98 (asking, "Okay. Aw. And did that hurt your feelings, [J.M.M.] lied to you?"), 114 (indicating that GAL Testa stated Attorney Ducote was laughing at her and she did not know why, followed by Attorney Ducote asking whether GAL Testa, "[H]ate[d] me too[,]" and then Attorney Ducote asking whether there was a reason GAL Testa was getting "sassy").

Attorney Ducote intended to obstruct, and did obstruct, the proceedings by distracting from the issues at the custody trial as framed by the trial court. *See Adams*, 645 A.2d at 272; *Ewing*, 451 A.2d at 755.

Thus, we conclude there was sufficient evidence to sustain the trial court's finding of direct criminal contempt, and we discern no merit to Attorney Ducote's argument that the record did not support the trial court's determination to hold him in direct criminal contempt.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 1/5/2026