J-S46033-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JOSHUA CRAWFORD | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JACQUELINE CRAWFORD | : | No. 653 WDA 2025 |

Appeal from the Order Entered April 10, 2025
In the Court of Common Pleas of Butler County Civil Division at No(s):
FC 24-90224-A

BEFORE:  BOWES, J., NICHOLS, J., and KING, J.

MEMORANDUM BY KING, J.:                    **FILED: FEBRUARY 26, 2026**

Appellant, Joshua Crawford, appeals from the order entered in the Butler County Court of Common Pleas, which found Appellant in indirect criminal contempt of court for violating an order under the Protection from Abuse ("PFA") Act,[1] in favor of Appellee, Jacqueline Crawford.  We affirm.

The relevant facts and procedural history of this appeal are as follows. The parties are the parents of four (4) minor children.  In 2024, the parties were married, but they had commenced divorce proceedings.  On May 28, 2024, Appellee obtained a temporary PFA order against Appellant in the Allegheny County Court of Common Pleas.  On June 11, 2024, the parties consented to an extension of the temporary PFA order, which would remain in

_____

[1] 23 Pa.C.S.A. §§ 6101-6122.

effect until December 11, 2024. The order included a provision prohibiting Appellant from contacting Appellee.

Thereafter, Appellant commenced a custody action in Butler County. On August 2, 2024, a custody conciliator issued her report. Among other things, the conciliator "recommended that both parties enroll in the Our Family Wizard website (www.OurFamilyWizard.com) within ten days of the date of the Order stemming from this Report."[2] (Report, dated 8/2/24, at 2) (unnumbered). Following the issuance of the conciliator's report, the court entered a custody order directing the parties to "enroll in the Our Family Wizard website … within ten days," and to "utilize this website for all communication concerning custody, with the exception of an emergency." (Order, filed 8/7/24, at 1). The custody order also modified the terms of the PFA order as follows:

> It is further ordered that [Appellee's] Allegheny County [PFA] Order shall be amended to allow the parties to have non-harassing contact on the Our Family Wizard website, to allow incidental contact at the minor children's activities and PTO activities, and at the exchanges of custody.

(*Id.*)

Despite the clear terms of the custody order, Appellant did not immediately enroll with Our Family Wizard. Instead, he communicated with Appellee about nonemergency matters via text message. Appellee notified

---

[2] "Our Family Wizard is a website offering web and mobile solutions for divorced or separated parents to communicate, reduce conflict, and reach resolutions on everyday coparenting matters[.]" ***Buehler v. Buehler***, 272 A.3d 736, 739 n.3 (Conn.App. 2022).

the police, and the Commonwealth filed an indirect criminal contempt complaint on December 2, 2024. On April 10, 2025, the court conducted a contempt hearing. At that time, the court received testimony from the parties. The court also reviewed the text messages, which the parties entered as Exhibits. (*See* Commonwealth's Hearing Exhibit 2; Appellant's Hearing Exhibit A).

At the conclusion of the hearing, the court found Appellant guilty of indirect criminal contempt. The court sentenced Appellant to six (6) months of probation. The court also prohibited Appellant from having any harassing communications with Appellee. Appellant timely filed a post-sentence motion on Monday, April 21, 2025. In it, Appellant challenged the sufficiency of the evidence supporting his conviction. Appellant also claimed that the court should have dismissed the charge as a *de minimis* infraction. The court denied the post-sentence motion on April 30, 2025.

Appellant timely filed a notice of appeal on May 30, 2025. On June 4, 2025, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant timely filed his Rule 1925(b) statement on June 11, 2025.

Appellant now raises four issues for this Court's review:

> Did the court abuse its discretion and/or misapply the law in finding Appellant guilty of indirect criminal contempt (PFA)?

> Do non-harassing and/or emergency communication via text message negate a guilty finding of ICC (PFA)?

- 3 -

Does the lack of wrongful intent negate a guilty finding of
ICC (PFA)?

Does a *de minimis*, non-harassing, non-threatening
communication negate a guilty finding of ICC (PFA)?

(Appellant's Brief at 8-9).

Appellant's first three issues are related, and we address them together. Appellant attacks the sufficiency of the evidence supporting his indirect criminal contempt conviction. First, Appellant contends that the underlying PFA order, as amended, was not clear or specific regarding the prohibited conduct. Appellant maintains that the order "permitted various types of communication, including actual physical interactions," which represented "a significant departure from traditional PFA language of no contact." (**Id.** at 15, 17) (capitalization omitted). "Appellant was of the belief that text messages were no different than Our Family Wizard, which was no different than actual physical interactions." (**Id.** at 18). Next, Appellant maintains that his text messages constituted emergency communications regarding the health and well-being of the children. Appellant insists that his text messages did not rise to the level of harassment, and the messages "did not cause [Appellee] to feel threatened." (**Id.** at 22). Finally, Appellant argues that he did not act with wrongful intent where he believed "that he was permitted various types of communication, including actual physical interactions." (**Id.** at 23). Based upon the foregoing, Appellant concludes that this Court must vacate the judgment of sentence and reverse his conviction. We disagree.

- 4 -

"[W]hen reviewing a contempt conviction, much reliance is given to the discretion of the trial judge. Accordingly, we are confined to a determination of whether the facts support the trial court decision." ***Commonwealth v. Kolansky***, 800 A.2d 937, 939 (Pa.Super. 2002) (quoting ***Williams v. Williams***, 681 A.2d 181, 183 (Pa.Super. 1996), *aff'd*, 554 Pa. 465, 721 A.2d 1072 (1998)). "We will reverse a trial court's determination only when there has been a plain abuse of discretion." ***Id.***

> An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record.

***Commonwealth v. Griffiths***, 15 A.3d 73, 76 (Pa.Super. 2010) (quoting ***Commonwealth v. Dent***, 837 A.2d 571, 577 (Pa.Super. 2003), *appeal denied*, 581 Pa. 671, 863 A.2d 1143 (2004)).

"The purpose of the PFA Act is to protect victims of domestic violence from those who perpetrate such abuse, with the primary goal of advance prevention of physical and sexual abuse." ***E.K. v. J.R.A.***, 237 A.3d 509, 519 (Pa.Super. 2020) (quoting ***Buchhalter v. Buchhalter***, 959 A.2d 1260, 1262 (Pa.Super. 2008)).

> Where a PFA order is involved, an indirect criminal contempt charge is designed to seek punishment for violation of the protective order. A charge of indirect criminal contempt consists of a claim that a violation of an order or decree of court occurred outside the presence of the court. To establish indirect criminal contempt, the Commonwealth must prove: 1) the order was sufficiently definite, clear, and specific to the contemnor as to leave no doubt of the

conduct prohibited; 2) the contemnor had notice of the order; 3) the act constituting the violation must have been volitional; and 4) the contemnor must have acted with wrongful intent.

***Commonwealth v. Lambert***, 147 A.3d 1221, 1226 (Pa.Super. 2016) (internal citations and quotation marks omitted).

"Wrongful intent will be found where the contemnor knows or reasonably should be aware that his conduct is wrongful." ***Stewart v. Foxworth***, 65 A.3d 468, 472 (Pa.Super. 2013) (quoting ***Himes v. Himes***, 833 A.2d 1124, 1126 (Pa.Super. 2003)). "It is imperative that trial judges use common sense and consider the context and surrounding factors in making their determinations of whether a violation of a court order is truly **intentional** before imposing sanctions of criminal contempt." ***Commonwealth v. Haigh***, 874 A.2d 1174, 1177 (Pa.Super. 2005), *appeal denied*, 585 Pa. 686, 887 A.2d 1240 (2005) (emphasis in original).

Instantly, the trial court evaluated the evidence presented at the contempt hearing, and it concluded that Appellant was in contempt:

> The credible evidence shows that between November 25 and 28, 2024, Appellant communicated with [Appellee] directly through text message, and without utilizing the Our Family Wizard website. Some of the communications related to the medical conditions of one of the parties' minor children, and the [c]ourt does not find those communications to be a violation as they were non-harassing and of an urgent issue. However, many of these communications were not of an emergency nature.
>
> Specifically, on November 26, 2024, following discussions related to the medical issue, Appellant then brought up childcare, his requests for financial concessions from

Appellee, their pending divorce, his brother whom is a topic of contention, and told Appellee that she is negatively impacting the children. Appellee did not respond to any of Appellant's communications that did not relate to the child's medical condition.

On November 27, 2024, Appellee initiated communication regarding the minor child's health. The parties then had a custody exchange later that day. Following the custody exchange, Appellant sent text messages to Appellee regarding her videoing the custody exchange, threatened to sue her, told Appellee that the child's tears were paid for with her happiness, and brought up their pending divorce again. Appellant sent additional messages calling Appellee a bad mother and told her that she's causing trauma for the children. Appellant then brought up the topic of Appellee hosting Thanksgiving at her home, reminding her that she's not allowed to have her extended family in the marital residence without his consent.

On November 28, 2024, following communications regarding the upcoming custody exchange, Appellant unnecessarily told Appellee that the kids want to sleep in for the Thanksgiving holiday, but can't in order to pay for their mother's happiness.

Appellant's communications to Appellee were made outside of Our Family Wizard, were not of an emergency nature, and were intended to be petty, argumentative, and disparaging. Appellant failed to register for Our Family Wizard, thus requiring Appellee to communicate with him via direct text message to effectuate custody exchanges. This limited communication on the part of Appellee does not negate the terms of the [PFA] order….

(Trial Court Opinion, filed 8/19/25, at 2-3) (unnumbered).

Our review of the record, which includes the text messages at issue, confirms the court's conclusions. The court correctly characterized these messages as petty and disparaging, where Appellant repeatedly attempted to demean Appellee by blaming her for the children's unhappiness. While not

- 7 -

threatening physical violence, Appellant escalated tensions between the parties by expressing his discontent with Appellee's post-separation behavior. For example, Appellant protested Appellee's decision to host her family for Thanksgiving:

> This [is] the last time I will say this. If you wish to enforce every single part of the marital settlement agreement to the letter as do I, this is your official cease and desist. I do not consent to anyone being in the house other than those named in the marital settlement agreement … due to the drug alcohol … and abuse that happens within your family you and I agreed to protect them and I will continue to protect our children throughout your divorce and the rest of their lives.
>
> It is not in mine or the kids best [interests] to take you to court. However, your irresponsible and damaging actions have forced me to protect myself and the children and I will do so with maximum effort.
>
> I have made my point crystal clear.

(Commonwealth's Hearing Exhibit 2 at 2 (unnumbered); Appellant's Hearing Exhibit A at 6 (unnumbered)). Appellant made it clear that he would use the legal system to combat any of Appellee's perceived transgressions.

During his direct examination, Appellant claimed to have understood that the custody order required him to use Our Family Wizard:

> [COUNSEL:] And what's your understanding of that court order?
>
> [APPELLANT:] That it was—the PFA was to be modified to allow contact electronically through … the kids' custody exchanges, at PTO events, at kids' activities.
>
> [COUNSEL:] The order specifically says, it is further ordered that both parties shall enroll in Our Family Wizard

> website within ten days of the date of this order. The parties shall utilize this website for all communication concerning custody, with the exception of an emergency. Is that your understanding?
>
> [APPELLANT:] Yes.

(N.T. Hearing, 4/10/25, at 29). Appellant subsequently admitted that he "signed up in December" for Our Family Wizard. (*Id.* at 31).

Appellant's brief repeatedly claims that distinguishing between messages sent through texts or Our Family Wizard "is a distinction without difference." (Appellant's Brief at 16, 18, 22, and 27). We disagree. Our Family Wizard is a tool specifically designed to facilitate communication in high-conflict coparenting situations. As such, Appellant should not have been so cavalier in his approach to obtaining and using the court-mandated communication service.

Based upon the foregoing, we conclude that the PFA order, as modified, was sufficiently clear to Appellant as to leave no doubt of the conduct prohibited. *See Lambert, supra*. Considering the order's clear terms, Appellant knew or should have known that his decision not to use Our Family Wizard was wrongful. *See Stewart, supra*. Additionally, the trial court used common sense and considered the context of the parties' relationship in making its determination that Appellant had committed a contempt. *See Haigh, supra*. Accordingly, Appellant is not entitled to relief on his first three claims.

In his final issue, Appellant relies on 18 Pa.C.S.A. § 312 for the

proposition that his contempt violation was *de minimis* and unworthy of prosecution. Appellant reiterates that he did not threaten or harm Appellee, and his "text messages lacked any measure of immediacy." (Appellant's Brief at 26). Moreover, Appellant emphasizes that some of his text messages amounted to permissible communication regarding the children's health, and the trial court did not specifically find that any of his messages amounted to harassment. Under these circumstances, Appellant concludes that the court should have dismissed the contempt charge due to the *de minimis*, technical nature of the PFA violation. We disagree.

Our standard of review for a claim that the trial court erred in refusing to dismiss a charge as *de minimis* is whether the court committed an abuse of discretion. ***Commonwealth v. Deible***, 300 A.3d 1025, 1033 (Pa.Super. 2023). The Crimes Codes addresses *de minimis* infractions as follows:

> **§ 312. *De minimis* infractions**
>
> **(a) General rule.—**The court shall dismiss a prosecution if, having regard to the nature of the conduct charged to constitute an offense and the nature of the attendant circumstances, it finds that the conduct of the defendant:
>
> (1) was within a customary license or tolerance, neither expressly negatived by the person whose interest was infringed nor inconsistent with the purpose of the law defining the offense;
>
> (2) did not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense or did so only to an extent too trivial to warrant the condemnation of conviction; or

> (3) presents such other extenuations that it cannot reasonably be regarded as envisaged by the General Assembly or other authority in forbidding the offense.

18 Pa.C.S.A. § 312. "An offense alleged to be *de minimis* in nature should not be dismissed where either harm to the victim or society in fact occurs." ***Commonwealth v. Lutes***, 793 A.2d 949, 963 (Pa.Super. 2002).

Instantly, the order in question required the parties to utilize Our Family Wizard "for **all communication concerning custody**, with the exception of an emergency." (Order, filed 8/7/24, at 1) (emphasis added). The trial court correctly recognized that most of Appellant's text messages to Appellee constituted nonemergency complaints about Appellee's behavior and parenting. Communication about such hot-button issues served to stoke tensions between the parties, which is exactly what the PFA order was supposed to prevent. Thus, we cannot say that the court abused its discretion by denying the post-sentence motion on this basis. ***See Deible, supra***. Accordingly, no relief is due.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 2/26/2026